[Civ. No. 3056. Fifth Dist. July 24, 1978.]

RICHARD LEMOS, Plaintiff and Appellant, v.
JOHN EICHEL, Defendant and Respondent;
MATT KELLSTROM et al., Defendants and Appellants.

[Civ. No. 3057. Fifth Dist. July 24, 1978.]

FRANK D. WROTEN et al., Plaintiffs and Appellants, v.
JOHN EICHEL, Defendant and Respondent;
MATT KELLSTROM et al., Defendants and Appellants.

[Civ. No. 3068. Fifth Dist. July 24, 1978.]

GEORGE W. HARDING et al., Plaintiffs and Appellants, v.
JOHN EICHEL, Defendant and Respondent;
MATT KELLSTROM et al., Defendants and Appellants.

COUNSEL

Miles, Sears & Eanni, Carmen A. Eanni, Gerald J. Maglio, Aguilar & Louis, Louis & Whitlock, Robert S. Louis, Dorrie E. Whitlock, Cardozo, Nickerson & Martelli, Cardozo, Nickerson, Martelli, Salter, Curtis & Arata and Timothy W. Salter for Plaintiffs and Appellants.

Price, Martin & Crabtree, Brunn & Lacey, E. Dean Price, Thomas D. Zeff and Charles K. Brunn for Defendants and Appellants.

No appearance for Defendant and Respondent.

OPINION

**BROWN (G. A.), P. J.**—These three actions consist of a personal injury action and two wrongful death actions, all arising out of the same accident. The three matters were consolidated for the purpose of trial. The principal issues on this appeal arise by reason of comparative fault and partial indemnity guidelines enunciated in the seminal cases of *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] and *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899]. The cases were tried in the post-*Li* pre-*American Motorcycle* milieu and were pending on appeal to this court when *American Motorcycle* came down.

These cases stem from an off-highway motorcycle accident which occurred on private property of Modesto Irrigation District. Ernest Harding, deceased, aged 15 years, was operating a motorcycle upon which Wade Wroten, deceased, aged 16 years, and Richard Lemos, aged 18 years, were passengers. Involved in the occurrence were three other motorcycles operated by defendants Matt Kellstrom, John Eichel and Allen Lionudakis.

Plaintiffs George W. Harding and Doris J. Harding, parents of deceased Ernest Harding, and Frank D. Wroten and Denzel Ray Wroten, parents of deceased Wade Wroten, filed wrongful death suits against Kellstrom, Eichel and Lionudakis and their parents, Modesto Irrigation District, and John Applegate, owner of the motorcycle Harding was operating.[1]

---

[1]The fault of the decedents, Ernest Harding and Wade Wroten, is attributable to the surviving plaintiffs in the wrongful death suits. (Code Civ. Proc., § 377; *Buckley* v.

Plaintiff Richard Lemos filed an action for personal injuries against the same defendants.[2]

No cross-complaints were filed against the plaintiffs Lemos, Wroten or Harding, nor have any of the defendants sought indemnity by way of cross-complaint against the party defendants or nonparties.

Before trial plaintiffs Lemos and Wroten settled their respective claims against the defendants Modesto Irrigation District and John Applegate for the total sum of $19,000. By agreement the sum was allocated $14,250 to Wroten and $4,750 to Lemos. These settlements were made pursuant to the provisions of Code of Civil Procedure section 877.[3] No one contends that the settlements were not consummated in good faith.

A special verdict returned by the jury found that "[w]ithout taking into consideration the question of reduction of damages due to the negligence of the plaintiff or of the deceaseds" the total amounts of damages suffered by each of the plaintiffs as a proximate result of the accident were as follows:

| | |
|---|---|
| Plaintiff Lemos | $16,556.45 |
| Plaintiffs Harding | 31,367.06 |
| Plaintiffs Wroten | 47,715.00 |

The jury also found that negligence of plaintiff Lemos or the decedents or other persons "contributed as a proximate cause of the plaintiffs' injuries and damages."

---

*Chadwick* (1955) 45 Cal.2d 183 [288 P.2d 12, 289 P.2d 242]; see *Willis* v. *Gordon* (1978) 20 Cal.3d 629, 636-638 [143 Cal.Rptr. 723, 574 P.2d 794].)

[2]For simplicity, the parties and their decedents will hereinafter be referred to as Harding, Wroten, Lemos, etc.

[3]Code of Civil Procedure section 877 provides:

"Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort—

"(a) It shall not discharge any other such tortfeasor from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater; and

"(b) It shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasors."

The jury was asked: "The combined negligence of the plaintiff, the deceaseds, the defendants and of other persons whose negligence proximately contributed to the injury being 100%, what proportion of such combined negligence is attributable to the plaintiff, what proportion of such combined negligence is attributable to each of the deceased, what proportion is attributable to each of the defendants, and what proportion is attributable to each of the other persons?"

The answer was:

| | |
|---|---:|
| Plaintiff Richard Lemos | 10 percent |
| Decedent Wade Wroten | 10 percent |
| Decedent Ernest Harding | 33 percent |
| Defendant Matt Kellstrom | 10 percent |
| Defendant John Eichel | 30 percent |
| Defendant Allen Lionudakis | 2 percent |
| Defendant John Applegate | 5 percent |
| Defendant Modesto Irrigation District | 0 percent |
| Total | 100 percent |

Based on the special verdict, the trial court entered judgment as follows:

| | In Favor of: | | |
|---|---|---|---|
| *Against:* | *Lemos* | *Wroten* | *Harding* |
| Eichel | $3,541.94 | $10,039.50 | $9,410.12 |
| Kellstrom | $1,180.65 | $ 3,346.50 | $3,136.71 |
| Lionudakis | $ 236.12 | $ 699.30 | $ 627.34 |

The plaintiffs appealed, urging that the liability of each defendant is joint and several for the entire sum awarded to each plaintiff less each plaintiff's settlement (where applicable) and less each plaintiff's comparative fault. Defendants' cross-appeals urge that the costs should be apportioned according to fault. Since the decision in *American Motorcycle* was filed defendants have filed a supplemental brief urging that the fault of each plaintiff should be charged to the others and that the causes should be reversed for retrial to permit the defendants to protect themselves by way of cross-complaints for indemnification.

It is apparent in each instance that in arriving at the above dollar amounts the trial court assessed damages against each defendant in proportion to that defendant's fault as found by the jury and in the cases

of Lemos and Wroten the court deducted the pretrial settlement before applying the defendants' fault percentages.

■ In sum *American Motorcycle* holds that the "joint and several liability" doctrine (see Code Civ. Proc., § 875) is not abolished or contracted by *Li's* adoption of the comparative negligence system; each tortfeasor whose negligence is a proximate cause of an indivisible injury remains individually liable for all compensable damages attributable to that injury. ■ The common law equitable indemnity doctrine is modified to permit a tortfeasor to obtain partial indemnity from other tortfeasors; a defendant who is liable to a plaintiff may file a cross-complaint against other tortfeasors, whether or not already parties in the action, to obtain partial indemnity from them on a comparative fault basis.[4]

■ It is apparent that *American Motorcycle* requires that the judgments be reversed for the purpose of entering joint and several judgments against Kellstrom, Eichel and Lionudakis.

In this regard appellants argue that the injuries to the plaintiffs are indivisible and incapable of being apportioned "where there is concerted action among multiple plaintiffs which is causative in nature and incapable of logical division." The basic flaw in this position is that none of the plaintiffs sued the other plaintiffs, and the issue as to the amount of fault, if any, of one plaintiff which may have contributed to the injury to any other plaintiff was not before the court, was not an issue in the case, and was not adjudicated. The court in *American Motorcycle* recognized the distinction between fault contributing to one's own injuries and fault causing injuries to another. In this regard the court stated: "Moreover, even when a plaintiff is partially at fault for his own injury, a plaintiff's culpability is not equivalent to that of a defendant. In this setting, a plaintiff's negligence relates only to a failure to use due care for his own protection, while a defendant's negligence relates to a lack of due care for the safety of others. Although we recognized in *Li* that a plaintiff's self-directed negligence would justify reducing his recovery in proportion to his degree of fault for the accident, the fact remains that insofar as the plaintiff's conduct creates only a risk of self-injury, such conduct, unlike that of a negligent defendant, is not tortious. [Citation.]" *(American Motorcycle Assn. v. Superior Court, supra,* 20 Cal.3d at pp. 589-590; fn. omitted.)

[4]The parties concede that since the cause was pending on appeal when *American Motorcycle* was decided its principles may properly be applied to this case. (See *Safeway Stores* v. *Nest-Kart* (1978) 21 Cal.3d 322, 333-334 [146 Cal.Rptr. 550, 579 P.2d 441].)

Moreover, *American Motorcycle* cites with approval BAJI No. 14.90 (see fn. 2, p. 590) and it is obvious from the wording of that instruction and the other BAJI instructions devised for use in comparative fault cases that the individual plaintiff's fault is to be compared to that of all others who have been found to have contributed to that plaintiff's injuries. The individual plaintiff's award should not be reduced by the fault of a coplaintiff in the absence of the pleading and proof of a legal relationship between them which requires such fault to be imputed to him.

It follows that the percentage of contributory fault to be deducted from each plaintiff's award is the percentage of fault attributable to that plaintiff as found by the jury.[5]

█ The next issue is whether the pretrial settlement received by Lemos and Wroten should be deducted from the total damages suffered by each of those plaintiffs before or after the reduction of the total damages by the percentage of fault attributable to that plaintiff. In each instance if the amount of the settlement is deducted first the amount by which the plaintiff's total damage will be reduced is less than if the percentage of fault is applied to the total damage figure first. Thus in the case of Lemos, for example, the net judgment under the former method is $10,625.80 ($16,556.45 minus $4,750 less 10 percent) as compared to $10,150.80 ($16,556.45 less 10 percent minus $4,750) under the latter method.

There apparently are no decided cases on this point. The language of Code of Civil Procedure section 877 (see fn. 3, *ante*) is of no help. Applying the percentage reduction to the total damage before deducting the settlement more closely complies with the *Li* test by reducing the plaintiff's damages "in proportion to the amount of negligence attributable to the person recovering." (*Li* v. *Yellow Cab Co., supra,* 13 Cal.3d at p. 829.) Thus, deducting the settlement first in effect reduces the fault percentage below that found by the jury. In the Lemos case, *ante,* for example, deducting the settlement first would cause Lemos' total damage to be reduced by only 7 percent rather than 10 percent as found by the jury. Accordingly, we conclude that the correct procedure is to apply each plaintiff's contributory fault percentage reduction to the total damage

---

[5]The special verdict form was erroneous in failing to set out separate forms for each plaintiff so that in arriving at the 100 percent fault to be allocated in each plaintiff's case the fault of each plaintiff would be compared to the fault of all the defendants and nonparties who may have contributed to the plaintiff's injury. The error, however, is of no consequence to the plaintiffs since pursuant to our decision herein the amount of their joint and several judgments would be the same in either case.

and reduce the resulting figure by the amount of that plaintiff's pretrial settlement. (See Peyrat, *Comparative Fault—Three Years After Li,* CJER J. (spring 1978) p. C.129, §§ 27, 28, 29, pp. C.142-C.143.)

■ Defendants argue further that the costs recoverable under Code of Civil Procedure section 1032 should be apportioned in accordance with fault. This contention has been answered adversely to the defendants' contention in *Hyatt* v. *Sierra Boat Co.* (1978) 79 Cal.App.3d 325, 347 [145 Cal.Rptr. 47]. The reasoning and conclusions of that case that costs should not be apportioned according to fault are sound and we concur with them.

■ Lastly, defendants urge that this cause be reversed for the purpose of "further proceedings in accord with the newly enunciated principles of partial indemnification." Apparently defendants are asking that this court reverse the plaintiffs' judgments in order to permit them (the defendants) to protect themselves by filing appropriate cross-complaints for indemnification. The defendants, however, did not preserve the issue of indemnification at any stage of the proceedings and there are not presently before us any pleadings or motions in this regard that were presented to or passed upon by the trial court. In discussing the retrospective application of *American Motorcycle* the court in *Safeway Stores* v. *Nest-Kart, supra,* 21 Cal.3d 322, seems to make the retrospective application of the indemnity principle enunciated in *American Motorcycle* to cases pending on appeal dependent upon whether ". . . the issue of comparative contribution or indemnity has been properly preserved below, . . ." (*id.,* at p. 333), stating "[w]e have no reason to suspect that the application of *American Motorcycle* to those cases in which the comparative contribution or comparative indemnity question has been properly preserved. at trial and on appeal will result in such a serious disruption of the administration of justice so as to warrant denying the benefits of the *American Motorcycle* doctrine to those defendants who have diligently pursued the issue." (*Id.,* at p. 334; fn. omitted.)

Accordingly, we decline to reverse for any purpose other than to enter appropriate joint and several judgments against the defendants.[6]

---

[6]Because the issue has not been briefed we express no opinion as to whether defendants can file indemnity suits independent of the principal action for partial indemnification under the principles of *American Motorcycle*; nor do we pass upon the effect of the compulsory cross-complaint provision contained in Code of Civil Procedure section 426.30 or the statute of limitations applicable to indemnity actions. (See *De La Forest* v. *Yandle* (1959) 171 Cal.App.2d 59 [340 P.2d 52]; *General Brewing Corp.* v. *Clark* (1968) 264 Cal.App.2d 518 [70 Cal.Rptr. 907].)

The judgments are reversed and the causes are remanded with directions to the trial court to enter a joint and several judgment in favor of the plaintiff or plaintiffs in each case against the defendants Kellstrom, Eichel and Lionudakis for the amount of the plaintiff or plaintiffs' total damages as found by the jury, reduced only by the percent of comparative fault attributable to the plaintiff or plaintiffs whose damages are being calculated, and reduced further by the amount of any pretrial settlement applicable, all in accordance with this opinion. Plaintiffs to recover costs. The orders denying the motions of defendants Kellstrom and Lionudakis to tax costs are affirmed.

Franson, J., and Hopper, J., concurred.

A petition for a rehearing was denied August 18, 1978, and the opinion was modified to read as printed above. The petition of appellant Lionudakis for a hearing by the Supreme Court was denied September 20, 1978.