[No. 48865–7. En Banc. December 1, 1983.]

ARLENE SCOTT, *as Personal Representative, Appellant,* v. CASCADE STRUCTURES, *Respondent.*

*Kenneth A. Lee,* for appellant.

*Merrick, Hofstedt & Lindsey, P.S.,* by *Sidney R. Snyder, Jr.,* for respondent.

*Bryan P. Harnetiaux* and *Robert H. Whaley* on behalf of Washington Trial Lawyers Association, amici curiae for appellant.

*George H. Bovingdon* on behalf of Washington Association of Defense Counsel, amicus curiae for respondent.

STAFFORD, J.—Appellant, Arlene Scott, personal representative of her husband's estate, appeals from a $130,000 judgment entered against respondent, Cascade Structures Corp. (Cascade). Appellant asks this court to interpret the contribution statute, RCW 4.22.060(2), to determine whether a reasonable settlement award should be sub-

tracted from the jury verdict before or after subtracting decedent's contributory negligence. Appellant further challenges the constitutionality of the tort and products liability reform act, RCW 4.22 and 7.72. We affirm the trial court's method of computation and reject appellant's constitutional challenge.

On November 1, 1979, Paul Scott was killed when he fell from the roof of a building then under construction. His widow and personal representative, Arlene Scott, brought a wrongful death action against respondent, Cascade, the roofing subcontractor; Aldrich and Hedman Construction Co., the general contractor; Pacific Cascade Corp., owner of the building; Lane Co., the developer; Ebert Pearson, a safety inspector for the Department of Labor and Industries; and the State of Washington. Prior to trial, appellant's claims against the State and Pearson were dismissed on summary judgment. The cross claims of the remaining defendants against the State were also settled and dismissed.

Trial on the wrongful death action began on May 7, 1982, with respondent Cascade, Aldrich and Hedman Construction Co., Lane Co., and Pacific Cascade Corp. as defendants. After several days of trial, appellant and all remaining defendants except respondent Cascade reached a settlement agreement whereby appellant would receive $60,000 in return for a covenant not to sue. The trial judge held a reasonableness hearing pursuant to RCW 4.22.060(1) and determined that $60,000 was reasonable, thereby extinguishing respondent Cascade's cross claims for contribution against the settling defendants. The trial continued with respondent Cascade as the only defendant.

The trial court gave to the jury a series of four questions to which the jury responded as follows:

QUESTION No. 1: Was there negligence by the defendant Cascade Structures which was a proximate cause of the death of Paul Scott?
ANSWER: Yes.
QUESTION No. 2: What is the total amount of plaintiff's

damages?

ANSWER: $570,000.

QUESTION No. 3: Was there negligence by the decedent Paul Scott which was a proximate cause of his death?

ANSWER: Yes.

QUESTION No. 4: Using 100% as the total combined negligence of Cascade Structures and Paul Scott which contributed to the injury or damage to the plaintiff, what percentage of such negligence is attributable to Paul Scott?

ANSWER: 66–2/3%.

Over appellant's objection, the trial court first reduced the total damage award by 66⅔ percent (*i.e.,* the amount of contributory negligence), then subtracted the $60,000 settlement award, and finally entered judgment against respondent Cascade for $130,000 plus costs. Appellant contends the trial court should have subtracted the settlement award *before* deducting for the contributory negligence. Under appellant's method of computation, she would be entitled to $170,000. Cascade has paid the $130,000 judgment plus costs into the registry of the court. Appellant has since withdrawn these funds.

## I

We turn first to Cascade's contention that by accepting and using the $130,000 judgment, appellant has waived her right to appeal.

Cascade relies on RAP 2.5(b) which provides:

**(b) Acceptance of Benefits.**

(1) *Decision Subject to Modification.* A party may accept the benefits of a trial court decision without losing the right to obtain review of that decision only (i) if the decision is one which is subject to modification by the court making the decision or (ii) if the party gives security as provided in subsection (b)(2).

(2) *Other Decisions—Security.* If a party gives adequate security to make restitution if the decision is reversed or modified, a party may accept the benefits of the decision without losing the right to obtain review of that decision. The trial court making the decision shall fix the amount and type of security to be given by the

party accepting the benefits.

Cascade asserts that the instant appeal must be dismissed because the trial court judgment is not subject to modification by that tribunal and appellant has not provided the required security. While Cascade's quotation of RAP 2.5(b) is accurate, the rule is not applicable here.

The purpose of RAP 2.5(b) is to ensure that a party seeking review will be able to make restitution if a decision is reversed or modified on appeal. *See* Comment, RAP 2.5(b)(2), 86 Wn.2d 1152 (1976). In the instant case it is clear the amount of the jury verdict, which resulted in an award of $130,000, is not subject to reduction by this court. The only question is whether appellant is entitled to $40,000 *more*. Since this is not a case in which restitution may be required, there is no need for appellant to provide security.

Moreover, this court has stated that a party may proceed with an appeal after receiving the benefits of the judgment if that party would be entitled to the benefits regardless of the outcome of the appeal. *Hinchman v. Point Defiance Ry.*, 14 Wash. 349, 356, 44 P. 867 (1896). *See also Grignon v. Wechselberger,* 70 Wn.2d 99, 101, 422 P.2d 25 (1966). This is consistent with the rule in other jurisdictions. Annot., *Right of Appeal From Judgment or Decree as Affected by Acceptance of Benefit Thereunder,* 169 A.L.R. 985, 1010 (1947). We therefore hold appellant has not waived her right to appeal.

## II

Appellant's primary contention is that the trial court erred in its method of calculating the amount of final judgment. Prior to 1981, contribution among joint tortfeasors was generally prohibited. *Wenatchee Wenoka Growers Ass'n v. Krack Corp.,* 89 Wn.2d 847, 576 P.2d 388 (1978). With the enactment of the Tort Reform Act in 1981, the Legislature overruled the common law and established a right of contribution between joint tortfeasors. Laws of 1981, ch. 27, § 12, codified as RCW 4.22.040. In creating a

right of contribution, the Legislature sought to encourage settlement agreements between parties. Senate Journal, 47th Legislature (1981), at 635–36. RCW 4.22.060(2) addresses the effect of a settlement agreement by providing:

> A release, covenant not to sue, covenant not to enforce judgment, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, *the claim of the releasing person against other persons is reduced by the amount paid pursuant to the agreement* unless the amount paid was unreasonable at the time of the agreement in which case the claim shall be reduced by an amount determined by the court to be reasonable.

(Italics ours.)

The controversy herein centers on what is meant by "the claim of the releasing party against other persons". Appellant contends her "claim" is the total damages sustained as a result of her husband's death, *i.e.,* $570,000. Appellant accordingly suggests the judgment should be calculated as follows:

| | |
|---|---|
| Plaintiff's gross damages (the "claim") | $570,000 |
| Amount paid in settlement | (60,000) |
| | $510,000 |
| Plaintiff's share of negligence $510,000 x ⅔ = | (340,000) |
| Plaintiff's judgment against nonsettling defendant | $170,000 |

This will be referred to as the "*gross damages*" approach. Under this approach, the figure of $510,000 would represent the total claim against the nonsettling defendant, respondent Cascade, from which plaintiff's share of the negligence vis–a–vis Cascade should be deducted.

The trial court construed appellant's "claim" as being the ultimate amount attributable to the negligence of others, *i.e.,* $190,000. The court therefore computed damages as follows:

| | |
|---|---|
| Plaintiff's gross damages | $570,000 |
| Plaintiff's share of negligence $570,000 x ⅔ = | (380,000) |
| Plaintiff's damages attributable to negligence of others (the "claim") | $190,000 |
| Amount paid in settlement | (60,000) |
| Plaintiff's judgment against nonsettling defendant | $130,000 |

This will be referred to as the "*net damages*" approach.

Appellant's proposed "gross damages" approach relies on a case decided shortly before enactment of the Tort Reform Act. *DeMaris v. Brown,* 27 Wn. App. 932, 621 P.2d 201 (1980), *review denied,* 95 Wn.2d 1014 (1981). In *DeMaris,* the Court of Appeals was faced with a situation identical to the one at hand. After setting forth the issue, the Court of Appeals concluded "the $10,000 settlement must first be deducted from the plaintiffs' total damages." *DeMaris,* at 945.

Appellant argues that because the Legislature did not expressly overrule this case in adopting the Tort Reform Act, *DeMaris* is still controlling. Although we did reaffirm the presumption that new legislation is consistent with prior case law in *Glass v. Stahl Specialty Co.,* 97 Wn.2d 880, 887–88, 652 P.2d 948 (1982), this rule of construction is inapposite. *DeMaris* was decided under a common law scheme which recognized a right of indemnity while prohibiting contribution between joint tortfeasors. Enactment of the Tort Reform Act radically changed the common law rules of tort liability. Therefore, the basis upon which *DeMaris* was decided is no longer valid.

We further note that while the Court of Appeals had issued its decision in *DeMaris* before the 1981 legislative session, the Tort Reform Act was passed by the Senate while *DeMaris* was still pending on a petition for review by this court. In fact, the act was signed into law only 9 days after we denied review. Under these circumstances, a presumption the Legislature did not intend to overrule *DeMaris* is unrealistic. We find *DeMaris* is no longer of

precedential value. We instead focus on which method of calculation best reflects both the language and the underlying policy of RCW 4.22.060(2).

Cascade supports its contention that the trial court correctly computed the damages by relying on the Senate Report as an indication of legislative intent. According to the Senate Select Committee that drafted the Tort Reform Act, "[RCW 4.22.060] differs from the Uniform Comparative Fault Act in that the *final judgment* of the claimant is reduced by the amount paid for a release . . . instead of the comparative fault of the released party as determined in the lawsuit." (Italics ours.) Senate Journal, 47th Legislature (1981), at 636. Cascade argues that by using the words "final judgment", the Legislature intended that the settlement award be deducted *after* reducing for the plaintiff's comparative negligence. Cascade further notes that a law review article written by the chairman of the drafting committee directly supports the approach taken by the trial court. Talmadge, *Washington's Product Liability Act,* 5 U. Puget Sound L. Rev. 1, 19 n.78 (1981).

■■ We have consistently held that the comments of individual legislators cannot be used to establish the intent of the entire legislative body. *Woodson v. State,* 95 Wn.2d 257, 623 P.2d 683 (1980). Nevertheless, the method of calculation used in Senator Talmadge's example is of some interest. *See Johnson v. Continental W., Inc.,* 99 Wn.2d 555, 663 P.2d 482 (1983). *See also Snow's Mobile Homes, Inc. v. Morgan,* 80 Wn.2d 283, 494 P.2d 216 (1972). This is particularly true when the comment is made by the legislator who chaired the drafting committee. Regardless of Senator Talmadge's article, however, we find the method of calculation employed by the trial court most accurately reflects the language and purpose of the contribution statute. Moreover, the trial court's method of calculation is consistent with the jury's verdict.

By applying the reduction for decedent's negligence to the total damage award before deducting the settlement award, the trial court reduced the appellant's damages in

proportion to the amount of negligence attributable to the person recovering. Under the gross damages approach, however, the percentage of fault attributable to the decedent would fall below the actual percentage determined by the jury. In the instant case, a $170,000 recovery plus a $60,000 settlement, for a total award of $230,000, would represent only 60 percent fault attributable to the decedent rather than the 66⅔ percent determined by the jury.

The purpose of the contribution statute is to ensure that a plaintiff receives that to which he or she is entitled. Accordingly, we conclude the proper method of calculation is to reduce the jury award by the percentage of fault attributable to the plaintiff before deducting the settlement award. This result is consistent with that reached by a California court interpreting a statute substantially similar to RCW 4.22.060(2). *Lemos v. Eichel,* 83 Cal. App. 3d 110, 147 Cal. Rptr. 603 (1978) (construing Cal. Civ. Proc. Code § 877 (West 1980)).

### III

Appellant contends that even if the trial court was correct in its interpretation of RCW 4.22.060(2), the entire act, Laws of 1981, ch. 27, is unconstitutional under Const. art. 2, § 19.[1] We do not agree. This argument is inherently flawed in view of our recent decision in *State v. Grisby,* 97 Wn.2d 493, 647 P.2d 6 (1982). *See also State v. Huntley,* 99 Wn.2d 27, 658 P.2d 1246 (1983).

In both *Grisby* and *Huntley,* this court reiterated the rule that as long as there is a rational nexus between the general subject as reflected in the title, and the subsections, the statute will meet the test of Const. art. 2, § 19. *Kueckelhan v. Federal Old Line Ins. Co.,* 69 Wn.2d 392, 403, 418 P.2d 443 (1966). This court also reaffirmed the principle that Const. art. 2, § 19 should be liberally construed so as to sustain the validity of a legislative enactment. *See Huntley,* at 29.

---

[1] Const. art. 2, § 19. "No bill shall embrace more than one subject, and that shall be expressed in the title."

■ RCW 4.22.060 was enacted in 1981 as section 14 of Laws of 1981, ch. 27, entitled:

AN ACT Relating to tort actions; amending section 2, chapter 138, Laws of 1973 1st ex. sess., and RCW 4.22-.020; creating new sections; adding new sections to Title 7 RCW as a new chapter thereof; adding new sections to chapter 4.22 RCW as a part thereof; and repealing section 1, chapter 138, Laws of 1973 1st ex. sess. and RCW 4.22.010.

The provisions of the act all relate to tort actions, with a special emphasis on the issue of products liability. Under a liberal construction of Const. art. 2, § 19, the act easily meets the "rational unity" test. We therefore find appellant's challenge to be without merit.

The trial court is affirmed.

BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., concur.

UTTER, J. (dissenting)—I dissent. The comparative fault of decedent was calculated not as a percentage of total fault, but as a percentage of the fault of the parties remaining in the action. Logically, this limited comparative fault figure should be applied not to total damages but to only those damages attributable to the parties remaining in the action. This latter figure is approximated by deduction of a reasonable settlement from total damages *before* multiplying by the plaintiff's comparative fault. I believe this approach is the one which should have been taken in the present case and the one which must have been intended by the Legislature.

The key to understanding the problem presented lies in identifying the nature of the "comparative fault" of the decedent by which plaintiff's damages were initially reduced. The percentage fault which the jury was instructed to determine was *not,* as the majority seems to assume, decedent's fault as a percentage of the total fault causing his death. Rather, the fault determined by the jury was decedent's fault as a percentage of some fraction of the

total fault, namely total fault less the fault of the settling defendants. See Clerk's Papers, at 2 (jury to determine percentage of negligence attributable to decedent "[u]sing 100% as the total combined negligence of Cascade Structures and [decedent]"). The reason for using this artificial figure is to avoid litigating the fault of parties not present. *See* Senate Select Committee on Tort Reform and Product Liability, 2 Hearing Transcripts, June 27, 1980, at 22–23 (testimony of Ron Bland), July 25, 1980, at 11 (comments of Senator Talmadge).

So characterizing the jury's determination of decedent's fault points up a fallacy in the majority's reasoning that it would be inequitable to reduce plaintiff's recovery by only 60 percent when the jury determined that decedent was 66⅔ percent at fault. The 66⅔ percent figure determined by the jury did not represent a conclusion that decedent was responsible for two–thirds of the *total* damages, but only that decedent was responsible for two–thirds of the portion of the damages caused by him and the remaining defendant, Cascade Structures.

Had the jury been asked to apportion fault between decedent, Cascade Structures, and the settling defendants, it might well have found decedent 60 percent at fault, Cascade 30 percent at fault, and the settling defendants 10 percent at fault. If so, the $230,000 recovery under plaintiff's proposed approach, equal to plaintiff's total damages less 60 percent, would be perfectly appropriate. If decedent were 50 percent at fault, Cascade were 25 percent at fault, and the settling defendants 25 percent at fault, a scenario also consistent with the jury verdict, even a $230,000 recovery would be insufficient. To paraphrase the Court of Appeals in *DeMaris v. Brown,* 27 Wn. App. 932, 621 P.2d 201 (1980), *review denied,* 95 Wn.2d 1014 (1981):

No one can know whether the tort–feasors' combined negligence might have been found to be [40] percent or less . . . or more than [40] percent . . . The settling tort–feasor[s] most likely wished to wash [their] hands clean of the whole affair. Involving the settling tort–feasor in

the suit has been avoided.

*DeMaris,* at 945–46. The purported inequity pointed out by the majority is thus speculative at best.

In any event, it is our obligation to implement the intent of the Legislature. *See Department of Transp. v. State Employees' Ins. Bd.,* 97 Wn.2d 454, 458, 645 P.2d 1076 (1982). In doing so, it is to be presumed that the Legislature intended a reasonable result. 2A C. Sands, *Statutory Construction* § 45.12 (4th ed. 1973).

The approach proposed by plaintiff is by far the most reasonable and is the only approach consistent with the limited scope of the trial. As noted above, the act requires that all allocation of fault at trial be among only those parties still remaining in the case. Logically, such fault apportionment figures should be applied to a correspondingly limited damages figure, *i.e.,* only those damages attributable to the remaining parties. This limited damages figure is to be created by the deduction from total damages of the court approved settlement, since that settlement should approximate the damages attributable to the settling defendants (*cf.* Senate Journal, 47th Legislature (1981), at 636 (noting deduction of settlement amount was substituted for corresponding deduction of settling defendants' fault under Uniform Comparative Fault Act)). Thus this deduction is to take place *before* multiplying by the fault attributable to the plaintiff.

*Lemos v. Eichel,* 83 Cal. App. 3d 110, 147 Cal. Rptr. 603 (1978), cited by the majority, is distinguishable. Under the California law construed therein, the plaintiff's comparative fault was determined by the jury as a percentage of *total* fault. *See Lemos,* at 116. The reasoning just set forth, that limited fault comparisons should be applied only to correspondingly limited damage figures, was therefore inapposite.

Neither are the committee report and comments of Senator Talmadge, cited by the majority, persuasive. The intent of individual legislators, especially intent expressed

after passage of the legislation, cannot be used to establish the intent of the Legislature as a whole. *See Woodson v. State,* 95 Wn.2d 257, 623 P.2d 683 (1980). The committee report's statement that the *"final judgment* of the claimant is reduced" (italics mine) (Senate Journal, 47th Legislature (1981), at 636) is only slightly less vague than the corresponding statutory provision that "the *claim* . . . is reduced" (italics mine) (RCW 4.22.060(2)).

Other legislative history supports plaintiff's position. For example, one witness at the hearings on the act, in discussing other aspects of the statute, put forth the following hypothetical:

> If I could give you an example, it might clarify that. If you would assume that the jury would otherwise find that the plaintiff was 30% at fault, the deep–pocket defendant, defendant #1 10% at fault and the relatively insolvent defendant, defendant #2 would be left with the balance of 60%. Now if that party settles out—and let's assume the plaintiff's damages are $100,000—if that party settles out for say $20,000 then as I read this statute, the plaintiff's claim then no longer is $100,000; it becomes $80,000. You reduce it by the amount of the settlement. You then must assume that the jury presumably will, when faced with only comparing defendant #1 with plaintiff, continue to compare them in roughly the same ratio that they did earlier, namely 30 to 10. And if asked to put it on a 100% scale, they would come up with 72–25.

Senate Select Committee on Tort Reform and Product Liability, 2 Hearing Transcripts, October 10, 1980, at 25 (testimony of Tom McLaughlin). This hypothetical appears to construe the act as advocated by plaintiff.

Plaintiff's position is also in accord with the controlling case law existing at the time the act was adopted. *See DeMaris v. Brown, supra,* in which the Court of Appeals so dealt with a situation identical to the present case. As the majority concedes, it is to be presumed that new legislation is consistent with prior case law. *Glass v. Stahl Specialty Co.,* 97 Wn.2d 880, 887–88, 652 P.2d 948 (1982). Here, there is nothing in the legislative history to rebut this presump-

tion. While it is true that *DeMaris* was decided at a time when there was no right of contribution between joint tort-feasors, the majority gives no reason, and I perceive none, why a change in this area of the law should affect plaintiffs' recoveries. Indeed, in cases such as the present case, where there has been a court approved settlement, there is still no right of contribution, even under the new statute. *See* RCW 4.22.060(2).

In summary, the statutory framework of the comparative fault law strongly suggests that settlements should be deducted *prior* to reduction of damages for comparative fault. Moreover, such an approach is the most equitable available considering the necessarily limited scope of trial. In addition, it is at least as consistent with the confused legislative history as the approach of the majority. I must therefore dissent.

WILLIAMS, C.J., and ROSELLINI, J., concur with UTTER, J.

Reconsideration denied January 11, 1984.