RICHARD D. JOHNSON,
*Court Administrator/Clerk*

*The Court of Appeals*
of the
*State of Washington*

DIVISION I
One Union Square
600 University Street
Seattle, WA
98101-4170
(206) 464-7750
TDD: (206) 587-5505

July 10, 2014

Richard Allen Davis, III
Chmelik, Sitkin & Davis
1500 Railroad Ave
Bellingham, WA, 98225-4542
rdavis@chmelik.com

D Murphy Evans
Brownlie Evans Wolf & Lee LLP
230 E Champion St
Bellingham, WA, 98225-4548
murphy@brownlieevans.com

CASE #: 70329-3-I
Sudden Valley Community Association, App v.
Curt Casey, Dave Scott, Barbara Volkov, Resps

Counsel:

Enclosed please find a copy of the order granting motion to publish opinion entered by this court in the above case today.

Sincerely,

Richard D. Johnson
Court Administrator/Clerk

emp

enclosure

c:    The Honorable Ira J. Uhrig
      Reporter of Decisions

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 JUL 10 AM 9: 24



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

CURT CASEY, DAVE SCOTT, ) NO. 70329-3-I
BARBARA VOLKOV, Washington )
residents, )
) DIVISION ONE
Respondents, )
)
v. )
)
SUDDEN VALLEY COMMUNITY ) ORDER GRANTING MOTION
ASSOCIATION, a Washington ) TO PUBLISH OPINION
homeowners' association, )
)
Appellant. )
)

Appellant Sudden Valley Community Association moved on June 10, 2014, to publish the opinion filed May 27, 2014, and the respondents have no objection. The court has determined that the motion should be granted. Therefore, it is

ORDERED that the motion to publish opinion is granted.

DATED this 10th day of July 2014.

FOR THE PANEL:

_____
Judge

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

CURT CASEY, DAVE SCOTT,
BARBARA VOLKOV, Washington
residents,

Respondents,

v.

SUDDEN VALLEY COMMUNITY
ASSOCIATION, a Washington
homeowners' association,

Appellant.

NO. 70329-3-I

DIVISION ONE

PUBLISHED OPINION

FILED: May 27, 2014

LAU, J. — This case involves a dispute over the process governing approval of homeowner association dues and assessment increases. Sudden Valley Community Association (Association) appeals the trial court's declaratory judgment order in favor of several Association members. The Association contends that the trial court erred in concluding that (1) its procedure for approving increases in annual homeowners' assessments and (2) its process of adopting "spending plans" to adjust expenditures due to decreased revenues violates the homeowners' association act (Act), chapter 64.38 RCW. Because the Act prohibits neither action, we reverse and remand with

instructions to enter declaratory relief and judgment in the Association's favor consistent with this opinion. We also reverse the trial court's award of attorney fees to plaintiffs and award the Association its appellate attorney fees as the prevailing party under the Act's attorney fees provision.

## FACTS

### Association's Budget and Assessment Policies under Bylaws and RCW 64.38.025

Sudden Valley Community Association is a nonprofit corporation and homeowners' association in Whatcom County. The Association is comprised of 3,204 lots, plus a variety of common amenities, including a golf course, community center, marina, swimming pools, and a fitness facility.

The Association is governed by its restrictive covenants, articles of incorporation, bylaws, and Washington state laws. A nine-member board of directors is responsible for its affairs, including adoption of annual budgets subject to ratification by the Association's members. The board is elected by the Association's members at the annual general meeting. Members have one vote for each Sudden Valley lot they own, meaning there are 3,204 possible votes at any membership meeting. A majority of the possible votes at a membership meeting is 1,603.

The Association derives revenue from a variety of sources, including annual dues and assessments[1] levied on its members, leases of building space to third parties, and usage fees for the swimming pools, fitness center, golf course, and marina. Since its incorporation in 1973, Association bylaws provided that annual dues and assessments

---

[1] The parties refer to the terms "dues" and "assessments" interchangeably.

must be established by the Board and approved by the members. Article III, section 19 of the bylaws requires approval of annual dues and assessments or special assessments by 60 percent of the members voting at a meeting.

No bylaws govern the process for adoption of the annual budget. The Association holds its annual general membership meeting in November and special general meetings as needed. Each year the Association presents to its members a budget for ratification under RCW 64.38.025(3),[2] which provides that the budget is ratified unless a majority of votes in the Association reject it.

The Association has historically viewed the bylaws' article III, section 19 as the exclusive means to increase the annual dues and assessments. According to the Association, RCW 64.38.025(3)'s budget ratification procedure applies only to budget adoption and not to dues and assessment increases. The proposed budget contains the Association's projected expenses and projected revenues from all sources, including annual dues and assessments. See Clerk's Papers (CP) at 312-13 (2009 proposed operating budget); CP at 348 (2010 recommended annual operating budget); CP at 381 (2011 proposed operating budget). If the Board proposes an increase in the annual dues and assessments for the following year, the Association offers a separate measure for the membership to approve under article III, section 19 of the bylaws. The board includes the additional revenue from that increase in the proposed budget. If, however, the members ratify the budget but reject the increase measure, the projected revenue in the budget is overstated. This occurred in years 2010, 2011, and 2012. The board dealt with the revenue shortfall by adopting a "spending plan" for each of those

---

[2] As discussed below, this provision is part of the Act, chapter 64.38 RCW.

years. This was an orderly method for the board to adjust expenditures to ensure that annual expenditures did not exceed actual revenues.

Due to article III, section 19's elevated (60 percent) approval threshold, most efforts to increase annual dues and assessments have failed. In August 2011, the board passed a motion rejecting the article III, section 19 voting procedures. It implemented a new process to increase the approval chances at the 2011 annual membership meeting. The August 22 meeting minutes state the rationale for the motion and quote the motion itself:

> Our experience at our last several AGM [annual membership meetings] has been consistent. Each year our budget is approved but the dues proposal is defeated. Something like 50% of the members vote. Since approval of the dues under our Bylaws requires a super majority of 60% of those voting, 20% of the membership can and has blocked all dues increases, except one small one for the pools. To prevent this from happening at the coming AGM, I move:
>> That at the AGM, the results of the vote on the regular budget for Operations, Road and Capital be increased in the Operations Budget to subsidize the cost of the pools and the Special Budget for the Capital Repair, Replacement, Reserve Fund be determined in accordance with Washington State Law, RCW 64.38.025, which provides that the Budget, including the Dues to support it is approved unless a majority of the membership rejects it.

(Emphasis added.) The board combined the vote on dues and assessments with the vote on the budget. The result was an overwhelming rejection of the combined measure, based on fewer than 50 percent of the total possible votes in the Association.[3] Under the new process, the board achieved its goal of increasing dues and assessments despite the members' overwhelming vote to reject it.

---

[3] Voting results: 658 approved and 1249 rejected the increase. Under RCW 64.38.025(3), 1605 votes were needed to reject.

Following the election of new board members, the board voted to rescind the August 22, 2011 motion and to reinstate the article III, section 19 procedure for voting on dues and assessment increases. The Board also treated the dues and assessment increase as invalid because a 60 percent voting majority failed to approve it as required under article III, section 19. The Association continued to assess and collect annual dues and assessments at the level established by the membership's March 2008 vote. The Association submitted no updated 2012 budget to the membership for ratification, but it adopted a 2012 "spending plan" instead.

Lawsuit

In September 2012, several individual Association members ("plaintiffs") filed a complaint against the Association seeking declaratory and injunctive relief. Plaintiffs requested the court to declare that (1) "RCW 64.38.025 governs [the Association's] adoption of any proposed dues assessment and overrides Article III, Section 19 of the Bylaws," (2) "RCW 64.38.025 governs [the Association's] adoption of any budget or special budget," (3) "RCW 64.38.025 requires that any proposed budget submitted to the membership for ratification must include any proposed dues assessments for the time period covered by the proposed budget," (4) "RCW 64.38.025 prohibits [the Association] board from adopting a revised budget or 'spending plan' that has not been previously ratified or approved by the membership." Plaintiffs also requested injunctive relief corresponding to the relief quoted above.

The Association's answer denied that the spending plans were revised budgets requiring ratification. It requested declaratory relief and specifically asked the court to declare, among other things, that (1) article III, section 19 of the bylaws governs the

voting approval threshold for increases in dues and assessments, (2) RCW 64.38.025's ratification threshold does not apply to approval of increases in the Association's dues and assessments, (3) the Board's approval of a spending plan does not constitute adoption of a regular or special budget requiring ratification under RCW 64.38.025, (4) "On those occasions when anticipated revenues in the budget ratified by the membership are not met because of the failure of the membership to approve an increase in dues and assessments, the Board may adopt and follow a spending plan without submitting the spending plan to the membership for ratification," and (5) "That the Board of [the Association] has the authority under the Bylaws to govern the Association which includes, inter alia, making financial decisions which vary from the budget ratified by the membership."

In February 2013, both parties moved for summary judgment. Each party asked the court to enter a declaratory judgment adopting its respective position on whether RCW 64.38.025 or article III, section 19 governed the Association's adoption of dues and assessment increases. The court heard oral argument. On May 7, 2013, the court issued an amended declaratory judgment ruling in plaintiffs' favor. The court determined:

> 1. Any dues and assessment measure proposed by the Sudden Valley Community Association must be ratified by membership vote in accordance with the requirements of RCW 64.38.025. To the extent that RCW 64.38.025 (the "statute["] and Article III, Section 19 of the [Association] Bylaws are inconsistent, the statute governs.
> 2. RCW 64.38.025 requires [the Association] to submit to its membership for ratification vote a unified budget proposal that includes both proposed expenditures and proposed revenues in a single measure.
> 3. The [Association] Board's practice of adopting "spending plans" without submitting such plans to a ratification vote of the membership violates RCW 64.38.025.

The court also awarded attorney fees to plaintiffs under RCW 64.38.050. The Association appeals.

ANALYSIS

Standard of Review

Where, as here, the facts are undisputed and the only issues are questions of law, the standard of review is de novo. Shafer v. Bd. of Trustees of Sandy Hook Yacht Club Estates, Inc., 76 Wn. App. 267, 273, 883 P.2d 1387 (1994). Questions of statutory construction are reviewed de novo. State v. Votava, 149 Wn.2d 178, 183, 66 P.3d 1050 (2003). "The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent and purpose." In re Condemnation Petition of Seattle Popular Monorail Auth., 155 Wn.2d 612, 627, 121 P.3d 1166 (2005). We read the statute as a whole to give effect to all language used. In re Pers. Restraint of Skylstad, 160 Wn.2d 944, 948, 162 P.3d 413 (2007).

Bylaws and the Act

The Association contends that article III, section 19's 60 percent approval requirement governs the establishment and approval of annual dues and assessments. Plaintiffs claim that the Act controls the process for imposing dues and assessments. Plaintiffs rely mainly on RCW 64.38.025(3)'s budget approval process.[4]

RCW 64.38.025(3) provides:

---

[4] At its core, plaintiffs' contention depends on the unsupported claim that the budget approval process is synonymous with the process for imposing dues and assessments.

-7-

Within thirty days after adoption by the board of directors of any proposed regular or special budget of the association, the board shall set a date for a meeting of the owners to consider ratification of the budget not less than fourteen nor more than sixty days after mailing of the summary. <u>Unless at that meeting the owners of a majority of the votes in the association are allocated or any larger percentage specified in the governing documents reject the budget, in person or by proxy, the budget is ratified, whether or not a quorum is present.</u> In the event the proposed budget is rejected or the required notice is not given, the periodic budget last ratified by the owners shall be continued until such time as the owners ratify a subsequent budget proposed by the board of directors.

(Emphasis added.) Plaintiffs do not argue this section is ambiguous. Indeed, the statute's plain language addresses the process for approving the budget,[5] not the process for imposing dues and assessments. Nowhere is "assessment" mentioned. We decline to read into this plainly written clause a meaning the legislature never intended.

Other provisions of the Act[6] govern assessments. The Act defines "assessment" as "all sums chargeable to an owner by an association in accordance with RCW 64.38.020." RCW 64.38.010(1). RCW 64.38.020(2) empowers the association to

---

[5] The Act provides no definition for "budget." When a statute fails to define a term, a court may rely on the ordinary meaning of the word as stated in a dictionary. See Budget Rent A Car Corp. v. Dep't of Licensing, 144 Wn.2d 889, 899, 31 P.3d 1174 (2001). "Budget" is ordinarily defined as "[a] statement of an organization's estimated revenues and expenses for a specified period, [usually] a year" or "[a] sum of money allocated to a particular purpose or project." BLACK'S LAW DICTIONARY 221 (9th ed. 2009). "Budget" means "1. an estimate, often itemized, of expected income and expense for a given period in the future. 2. a plan of operations based on such an estimate. 3. an itemized allotment of funds, time, etc., for a given period. 4. the total sum of money set aside or needed for a purpose: the construction budget." Dictionary.com (last visited May 12, 2014) (emphasis omitted).

[6] The Act was enacted in 1995 and addresses the rights and responsibilities of homeowners' associations. The Act is based on the Uniform Common Interest Ownership Act (UCIOA) as drafted by the National Conference of Commissioners on Uniform State Laws in 1994.

"[a]dopt and amend budgets for revenues, expenditures, and reserves, <u>and impose and collect assessments for common expenses from owners</u>." (Emphasis added). And under RCW 64.38.020(11), the association may "[i]mpose and collect charges for late payments of assessments . . . ." That section further provides for the levy of fines following notice and an opportunity to be heard.[7] None of the provisions governing assessments mentions or requires dues and assessments to be approved under RCW 64.38.025(3)'s budget ratification process. The Act's statutory scheme treats budgets and assessments as distinct subjects. See, e.g., RCW 64.38.020.

Plaintiffs also argue that because the proposed budgets included the proposed revenues from dues and assessment increases, RCW 64.38.025's budget ratification procedure also applies to the projected dues and assessment revenue. As discussed above, the Act's plain language undermines this assertion.

The Act also neither prohibits nor limits the Association's authority to levy dues and assessments under a process outlined in its governing documents. RCW 68.34.020 enumerates the powers that a homeowners' association may exercise "[u]nless otherwise provided in the governing documents," including the power to "[a]dopt and amend bylaws, rules, and regulations;" "[a]dopt and amend budgets for revenues, expenditures, and reserves, and impose and collect assessments for

---

[7] Section 3-102 of the UCIOA provides for "Powers of Unit Owners' Association" and contains language similar to that in RCW 64.38.020. Section 3-102 states that the association may "adopt and amend budgets for revenues, expenditures, and reserves and collect assessments for common expenses from unit owners." Section 3-102(a)(2). The association may also "exercise any other powers conferred by the declaration or bylaws." Section 3-102(a)(15). The commentary to the UCIOA states, "The declaration may limit the right of the association to exercise any of the listed powers, except in a manner which discriminates in favor of a declarant." Comment 4 to Section 1-104 (discussing Section 3-102 (Powers of the Association)).

common expenses from owners;" "[e]xercise any other powers conferred by the bylaws;" and "[e]xercise any other powers necessary and proper for the governance and operation of the association." RCW 64.38.020(1), (2), (12), (14). The Act's definition of "governing documents" is broad and expressly includes covenants and bylaws. RCW 64.38.010(10). Here, the bylaws authorize the Association's process for establishing and increasing dues and assessments.

Plaintiffs also rely on RCW 64.38.025(4)[8] and RCW 64.38.035[9] to argue that these provisions indicate the legislature intended that approval of a budget

---

[8] RCW 64.38.025(4) provides:
"As part of the summary of the budget provided to all owners, the board of directors shall disclose to the owners:

"(a) The current amount of regular assessments budgeted for contribution to the reserve account, the recommended contribution rate from the reserve study, and the funding plan upon which the recommended contribution rate is based;

"(b) If additional regular or special assessments are scheduled to be imposed, the date the assessments are due, the amount of the assessments per each owner per month or year, and the purpose of the assessments;

"(c) Based upon the most recent reserve study and other information, whether currently projected reserve account balances will be sufficient at the end of each year to meet the association's obligation for major maintenance, repair, or replacement of reserve components during the next thirty years;

"(d) If reserve account balances are not projected to be sufficient, what additional assessments may be necessary to ensure that sufficient reserve account funds will be available each year during the next thirty years, the approximate dates assessments may be due, and the amount of the assessments per owner per month or year;

"(e) The estimated amount recommended in the reserve account at the end of the current fiscal year based on the most recent reserve study, the projected reserve account cash balance at the end of the current fiscal year, and the percent funded at the date of the latest reserve study;

"(f) The estimated amount recommended in the reserve account based upon the most recent reserve study at the end of each of the next five budget years, the projected reserve account cash balance in each of those years, and the projected percent funded for each of those years; and

"(g) If the funding plan approved by the association is implemented, the projected reserve account cash balance in each of the next five budget years and the percent funded for each of those years."

-10-

automatically means approval of dues and assessments. In other words, a favorable vote to ratify a budget also results in approval of a dues and assessment increase.

The plain language of RCW 64.38.025(4) fails to support plaintiffs' argument. The "summary of the budget" that homeowners' associations provide to members has nothing to do with whether the budget ratification process automatically imposes a binding assessment obligation on members. The purpose of the summary is to explain a capital reserve document—which makes 30-year projections—in terms easily understood by its members. It informs members whether the association can fund its capital projects in the coming years and how it plans to do so. Legislative history[10] also shows that RCW 64.38.025(4) is a disclosure requirement.[11] RCW 64.38.025(4) fails to support plaintiffs' argument.

---

[9] This provision states in relevant part:

"(1) A meeting of the association must be held at least once each year. Special meetings of the association may be called by the president, a majority of the board of directors, or by owners having ten percent of the votes in the association.

. . . .

(3) The notice of any meeting shall state the time and place of the meeting and the business to be placed on the agenda by the board of directors for a vote by the owners, including the general nature of any proposed amendment to the articles of incorporation, bylaws, any budget or changes in the previously approved budget that result in a change in assessment obligation, and any proposal to remove a director." RCW 64.38.035(1) (emphasis added). Subsection (3) addresses voting on (1) budgets and (2) proposed changes to a previously approved budget that result in a change in assessment obligation. See RCW 64.38.035(3).

[10] Legislative history may be of some interest even where the court concludes that the statute's plain language is unambiguous. Scott v. Cascade Structures, 100 Wn.2d 537, 544, 673 P.2d 179 (1983). "This is particularly so where the contemporaneous record of a bill's progress bolsters the plain meaning." Lane v. Port of Seattle, 178 Wn. App. 110, 119 n.3, 316 P.3d 1070 (2013).

[11] See FINAL B. REP. on Engrossed Substitute H.B. 1309, at 3, 62d Leg., Reg. Sess. (Wash. 2011) ("Homeowners' associations are encouraged to establish reserve

Plaintiffs rely on RCW 64.38.035 for the first time on appeal. Nonetheless, RCW 64.38.035(3) does not apply here. It merely makes RCW 64.38.025(3)'s budget ratification procedure applicable to changes in a previously approved budget that result in a change in assessments—an unremarkable requirement given the Act's strong emphasis on notice and protecting members.

Plaintiffs repeatedly refer to RCW 64.38.005 for support. It provides, "The intent of this chapter [the Act] is to provide consistent laws regarding the formation and legal administration of homeowners' associations." RCW 64.38.005. The House Bill Report for the Act states:

> The bill is needed to deal with common complaints received from members of homeowners' associations. The bill provides a set of basic rules and procedures by which homeowners' associations must operate in order to protect individual association members. The board of directors of some homeowners' associations currently do not provide members notice of their actions and imposition of assessments. The board needs to be accountable to the members of the association and needs to make decisions based on the association's interests.

H.B. REP. on H.B. 1471, 54th Leg., Reg. Sess. (Wash. 1995). Plaintiffs argue that the legislature's use of the term "consistent laws" in the intent statement means the legislature intended all homeowners' associations to impose dues in a uniform manner. But neither the Act's language nor its legislative history suggest the legislature was attempting to create comprehensive procedural rules. The legislature was concerned

---

accounts, supplemental to the annual operating budget, to fund major maintenance, repair, and replacement of common elements. . . . HOAs must disclose information to owners regarding reserve accounts and reserve studies with the summary of the annual budget.") (emphasis added)); H.B. REP. on Engrossed Substitute H.B. 1309, at 4, 62d Leg., Reg. Sess. (Wash. 2011) (same); S.B. REP. on Engrossed Substitute H.B. 1309, at 3, 62d Leg., Reg. Sess. (Wash. 2011) (same).

70329-3-I/13

with protecting members from lack of information. Nothing indicates the legislature

intended to go further.

Plaintiffs also rely on provisions from the closely related Condominium Act,

chapter 64.34 RCW. They cite RCW 64.34.308(3) and (4)[12]—which are nearly identical

---

[12] These subsections provide:

"(3) Within thirty days after adoption of any proposed budget for the condominium, the board of directors shall provide a summary of the budget to all the unit owners and shall set a date for a meeting of the unit owners to consider ratification of the budget not less than fourteen nor more than sixty days after mailing of the summary. Unless at that meeting the owners of units to which a majority of the votes in the association are allocated or any larger percentage specified in the declaration reject the budget, the budget is ratified, whether or not a quorum is present. In the event the proposed budget is rejected or the required notice is not given, the periodic budget last ratified by the unit owners shall be continued until such time as the unit owners ratify a subsequent budget proposed by the board of directors.

"(4) As part of the summary of the budget provided to all unit owners, the board of directors shall disclose to the unit owners:

"(a) The current amount of regular assessments budgeted for contribution to the reserve account, the recommended contribution rate from the reserve study, and the funding plan upon which the recommended contribution rate is based;

"(b) If additional regular or special assessments are scheduled to be imposed, the date the assessments are due, the amount of the assessments per each unit per month or year, and the purpose of the assessments;

"(c) Based upon the most recent reserve study and other information, whether currently projected reserve account balances will be sufficient at the end of each year to meet the association's obligation for major maintenance, repair, or replacement of reserve components during the next thirty years;

"(d) If reserve account balances are not projected to be sufficient, what additional assessments may be necessary to ensure that sufficient reserve account funds will be available each year during the next thirty years, the approximate dates assessments may be due, and the amount of the assessments per unit per month or year;

"(e) The estimated amount recommended in the reserve account at the end of the current fiscal year based on the most recent reserve study, the projected reserve account cash balance at the end of the current fiscal year, and the percent funded at the date of the latest reserve study;

"(f) The estimated amount recommended in the reserve account based upon the most recent reserve study at the end of each of the next five budget years, the projected reserve account cash balance in each of those years, and the projected percent funded for each of those years; and

to RCW 64.38.025(3) and (4) quoted above—as well as RCW 64.34.360(1)'s requirement that "After any assessment has been made by the association, assessments must be made against all units, based on a budget adopted by the association." Plaintiffs contend that the Act "was clearly based on [the Condominium Act]." Resp't's Br. at 27.

To the extent RCW 64.34.360(1) requires assessments to be ratified at the same time and by the same process under the Condominium Act,[13] the legislature did not use the same language in the homeowners' association act. It did not say—as it did for condominiums in RCW 64.34.360—that assessments must be based on the budget.[14]

---

"(g) If the funding plan approved by the association is implemented, the projected reserve account cash balance in each of the next five budget years and the percent funded for each of those years." RCW 64.34.308(3), (4).

[13] We question this premise, as the language cited does not appear to require that conclusion and plaintiffs cite no legislative history or other support for this argument.

[14] Further, like the homeowners' association act, the Condominium Act was based on the UCIOA. The UCIOA contains a provision nearly identical to RCW 64.34.360(1): "Until the association makes a common expense assessment, the declarant shall pay all common expenses. After an assessment has been made by the association, assessments must be made at least annually, based on a budget adopted at least annually by the association." Section 3-115(a). The UCIOA commentary indicates this provision was intended to ensure fairness in assessments against all units: "[O]nce an assessment is made against any unit, all units, including those owned by the declarant, must be assessed for their full portion of the common expense liability." Comment 1 to Section 3-115. The official comments to RCW 64.34.360 contain identical language. See Washington Condominium Act Official Comments to RCW 64.34.360; see also opening comments to the Washington Condominium Act ("These comments are not part of the statute itself, but were published by the committee to help explain the intentions of the statute drafters as an aid to interpretation of the statute."). Even if the legislature had included a similar provision in the homeowners' association act, nothing in the commentary supports plaintiffs' position.

We also note that even outside the context of RCW 64.34.360 discussed above, nothing in the official comments to the Condominium Act or the commentary to the

Where the legislature expressly includes a provision in one statute but not another, we may presume that the exclusion was intentional. See, e.g., State v. Delgado, 148 Wn.2d 723, 728–29, 63 P.3d 792 (2003); In re Det. of Williams, 147 Wn.2d 476, 491, 55 P.3d 597 (2002). We conclude that the Act conveys a plain meaning. It contains no requirement that dues and assessments imposed by the Association must be approved in accordance with RCW 64.38.025(3)'s budget ratification process.

"Spending Plans"

The Association argues the court erred in determining that the adoption of "spending plans" without a membership vote violates RCW 64.38.025. It contends the spending plans merely reflect reductions in expenditures necessitated by underfunded budgets. Plaintiffs respond that the spending plans are essentially revised budgets that must be submitted to the membership for ratification.

Plaintiffs "do not deny that the board has authority to adjust spending to deal with changes in circumstances that take place during the fiscal year after the budget is

---

UCIOA supports plaintiffs' position. Both documents express legislative intent to permit an association's declaration to limit the right of the association to exercise any of its listed powers. See Comment 4 to UCIOA Section 1-104 ("The declaration may limit the right of the association to exercise any of the listed powers, except in a manner which discriminates in favor of a declarant.") (discussing Section 3-102 ("Powers of the Association")); Washington Condominium Act Official Comments to RCW 64.34.030 (same; discussing RCW 64.34.304 ("Powers of Unit Owners' Association")). Both confer great leeway as to what is included in the bylaws. See Comment 4 to Section 1-104 ("Subject to the provisions of the declaration, the bylaws may contain any matter in addition to that required by the Act.") (discussing Section 3-106 ("Bylaws")); Washington Condominium Act Official Comments to RCW 64.34.030 (same; discussing RCW 64.34.324 ("Bylaws")). Thus, to the extent the Condominium Act is useful here, it supports the Association's argument rather than plaintiffs' interpretation.

approved by the membership."[15]  Resp't's Br. at 30.  However, citing RCW 64.38.035(3)'s notice requirement for "any budget or changes in the previously approved budget that result in a change in assessment obligation," they argue that spending plan approval requires notice and a vote.  Plaintiffs contend only "unanticipated changes in circumstances," such as a tenant defaulting on its lease, a downturn in the economy, or other necessary budget changes "that are unrelated to the level of dues assessed by the association," are excluded from RCW 64.38.035(3)'s notice requirement.  Resp't's Br. at 30.  They acknowledge that "RCW 64.38.035 does not require the association to give its membership notice of a change in the budget that is not related to a change in assessments."  Resp't's Br. at 30.  However, they claim that here, the spending plans were caused by changes in the dues and assessment obligation because the members rejected the proposed increases, resulting in underfunded budgets.

Plaintiffs' assertion is undermined by the notice requirement's plain language.  The statute requires no notice of changes to the budget that result from a change in assessment obligation.  It requires notice of changes to the budget that result in a change in assessment obligation.  It is undisputed that none of the Association's "spending plans" resulted in changes in the assessment obligation.  The spending plans outlined expenditure cuts resulting from a dues and assessment increase rejection.  The

_____

[15] Indeed, "[a]ssociation management must perform its budgeting and set and collect its assessments with such potential future developments in mind.  No one can know in advance what costs will be demanded, or when.  It is inescapable that some exigencies will arise and that the association must be able to respond with urgently needed cash while keeping itself fiscally sound."  James L. Winokur, Critical Assessment: The Financial Role of Community Associations, 38 Santa Clara L. Rev. 1135, 1162 (1998).

dues and assessment obligation remained the same as it was in 2008, the last time the members approved an increase.

Plaintiffs also rely on RCW 64.38.025(3), which specifies that if a budget is rejected, the Association must revert to the budget last ratified by the membership. Plaintiffs claim that "[the Association] should have reverted to the budget last ratified by membership vote" rather than adopting "spending plans." Resp't's Br. at 33. The statute's plain language defeats plaintiffs' argument. This provision applies only if members reject a proposed budget. It is undisputed that the members did not reject any of the proposed budgets here. Instead, they ratified the budgets but rejected dues and assessment increases that partially funded the budgets, thus requiring the Association to adjust spending to account for the shortfall.

The trial court erred in determining that the Association's spending plans violate the Act. Nothing in the Act requires the Association to obtain member approval for spending adjustments in these circumstances.

<u>Attorney Fees</u>

Both parties request attorney fees under RCW 64.38.050, which states, "Any violation of the provisions of this chapter entitles an aggrieved party to any remedy provided by law or in equity. The court, in an appropriate case, may award reasonable attorneys' fees to the prevailing party." The Association is entitled to attorney fees as the prevailing party.[16]

---

[16] Plaintiffs argue this is not an "appropriate case" for the Association to recoup its attorney fees for the sole reason that "it is not appropriate that associations who successfully defend against allegations that they have violated the Act should recover their attorney's fees from the members, because the Act is not intended to protect

CONCLUSION[17]

For the reasons discussed above, the trial court erred when it granted declaratory relief in plaintiffs' favor. We reverse the trial court's declaratory judgment order and remand with instructions to enter declaratory relief and judgment in the Association's favor consistent with this opinion. We also reverse the trial court's award of attorney fees to plaintiffs and award appellate attorney fees to the Association subject to its compliance with RAP 18.1.

WE CONCUR:

---

associations from their members, and awarding associations their attorney's fees whenever they successfully defend would only discourage such suits and reduce the likelihood that the Act will be enforced." Resp't's Br. at 43. They cite no authority for this argument, and they misconstrue the statute. On its face, RCW 64.38.050 does not limit an award of fees to aggrieved homeowners but does allow fees to the "prevailing party." This allows homeowners' associations, which are funded by the community as a whole, to recoup expenses incurred in defending against nonprevailing homeowners.

[17] We decline to address plaintiffs' past dues collected assertion. This is a declaratory judgment action and the assertion is raised for the first time on appeal.

-18-