**Ronda G. JENSEN, Plaintiff-Appellant,**

v.

**ARA SERVICES, INC., Defendant-Respondent.**

No. 14669.

Missouri Court of Appeals, Southern District, Division One.

Oct. 21, 1986.

---

Michael W. Manners and Robert J. Graeff Paden, Welch, Martin, Albano & Graeff, P.C., Independence, for plaintiff-appellant.

Steven P. Carlton, Johnston and Carlton, Carthage, for defendant-respondent.

JAMES A. PUDLOWSKI, Special Judge.

Plaintiff Ronda G. Jensen appeals from a judgment in a jury tried case which award-ed her $80,000 in damages for the wrongful death of her husband Karl Jensen.

The facts, as stipulated by the parties, are as follows:

On February 24, 1980, plaintiff's decedent, Karl Jensen, was killed in a traffic accident when his motorcycle collided with the rear of an unlighted truck parked on a dark street. The truck was operated by Tasso Pappas and owned by Jim Pappas. Prior to the accident Tasso parked the truck on the pavement of St. Louis Avenue in Joplin so he could load magazines into a van parked on the shoulder of the road. The van belonged to ARA Services, Inc., ("ARA"). On February 17, 1981, plaintiff filed suit against Tasso Pappas, Jim Pappas and ARA in Jasper County Circuit Court. In April of 1983 the cause proceeded to trial and resulted in a verdict for all defendants upon which the trial court entered judgment. Because of instructional error, that judgment was reversed by this court on December 7, 1984, *Jensen v. Pappas*, 684 S.W.2d 524, and remanded for a new trial.

After remand plaintiff settled her claim against Tasso and Jim Pappas for $100,000, the limit of their liability insurance coverage. On September 10, 1985, plaintiff proceeded to trial on her claim against ARA. Plaintiff's cause against ARA was submitted on the theory that ARA negligently caused Tasso Pappas to park his truck on the pavement. Defendant submitted a contributory fault instruction. On September 11, 1985, the jury return a verdict in favor of plaintiff, finding that her damages totalled $300,000 and that the relative fault of decedent and ARA were, respectively, 40% and 60%.

Thereafter, plaintiff prepared two proposed judgment entries which she supplied to the trial court. The difference in the two entries was based on how the effect of decedent's fault was calculated, whether on the total amount of plaintiff's damages or merely on that portion for which ARA was liable. The differences are set out as follows:

*Fault deducted from all damages*

| | |
|---|---|
| Plaintiff's Damages | $300,000 |
| Less decedent's fault ($300,000 × 40%) | −120,000 |
| | 180,000 |
| Less Pappas settlement | −100,000 |
| Judgment against ARA | $ 80,000 |

*Fault deducted from damages for which ARA is liable*

| | |
|---|---|
| Plaintiff's Damages | $300,000 |
| Less settlement | −100,000 |
| Maximum amount for which ARA can be liable | 200,000 |
| Less decedent's fault ($200,000 × 40%) | − 80,000 |
| Judgment against ARA | $120,000 |

The trial court entered judgment against ARA for $80,000 on February 11, 1986.

Plaintiff candidly admits that her method of calculating damages was counter to the method proscribed in *Schiles v. Schaefer*, 710 S.W.2d 254 (Mo.App.1986). There, our brethren in the Eastern District examined the damage formula used by the trial court in a wrongful death action when plaintiff's decedent had been 2% at fault, which produced the following:

| | |
|---|---|
| $1,500,000 | Total damages |
| − 250,000 | Settlement from St. Joseph's Hospital |
| 1,250,000 | |
| 837,500 | 67% defendant Dr. Schaefer's fault |
| 262,500 | 21% defendant Dr. Butsch's fault |
| 125,000 | 10% defendant Ernst Radiology's fault |
| 25,000 | 2% plaintiff's decedent's fault |

The Eastern District modified the judgment using this formula:

| | |
|---|---|
| $1,500,000 | Total damages |
| 30,000 | 2% plaintiff's decedent's fault |
| 1,470,000 | |
| 250,000 | Settlement from St. Joseph's Hospital |
| 1,220,000 | Remaining damages |
| 834,282 | 67% defendant Dr. Schaefer's fault |
| 261,428 | 21% defendant Dr. Butsch's fault |
| 124,490 | 10% defendant Ernst Radiology's fault |

The Eastern district posited that neither *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983), RSMo § 537.060 (1984 Supp.) nor the Uniform Comparative Fault Act explicitly answered the question presented. In selecting its particular formula, the court did not cite to any other authority for its decision. 710 S.W.2d at 276–277. Rather, the court based its holding on the fact that it believed the formula used by the trial court, the formula advocated by the plaintiff in the case *sub judice*, "erroneously awarded plaintiffs more than they would have recovered had there been no settlement." *Id.* at 277.

ARA cites us to *Scott v. Cascade Structure*, 100 Wash.2d 537, 673 P.2d 179 (1983) to support the trial court's and the Eastern District's method of calculation. There, the Supreme Court of Washington refused to follow the precedent of an earlier Washington opinion and, instead subtracted the settlement payment after factoring in plaintiff's negligence. *Id.*, 673 P.2d at 181–2. In its opinion, the majority interpreted the contribution statute which said in pertinent part: "the claim of the releasing person against other persons is reduced by the amount paid pursuant to the agreement." RCW 4.22.060(2) (1981).

To the Washington Supreme Court, the key word is "claim." The court rejected the view that the claim was the total damages sustained by the plaintiff, and, instead, construed it to be the ultimate amount attributable to the negligence of others. The court based its interpretation on the statute's legislative history 'which said that the "final judgment of the claimant would be reduced by the release payment." By using the term "final judgment," the court concluded that the Washington legislature intended the settlement amount be deducted after reducing for the plaintiff's comparative negligence. 673 P.2d at 182.

The Washington Supreme Court offered two additional reasons for its holding. First, it stated that if it were to deduct the settlement before reducing the award to reflect plaintiff's negligence, the percentage of fault chargeable to the plaintiff "would fall below the actual percentage determined by the jury." That implies that this result would be inconsistent with the "purpose of the contribution statute [which] is to ensure that a plaintiff receives that to which he or she is entitled." *Id.* at 183. Secondly, the court found that its result was consistent with *Lemos v. Eichel,*

83 Cal.App.3d 110, 147 Cal.Rptr. 603 (1978). *Id.*

ARA's reliance on *Scott* is misplaced. First, the Washington contribution statute is dissimilar to Missouri's. In Washington, the trial court subtracts the releasing person's claim *against other persons.* The claim must be adjusted for the fault of those who are not "other persons" such as the plaintiff and, perhaps, the settling defendant. In other words, at least plaintiff's fault must be deducted. In Missouri, the term "claim" is not restricted. RSMo 537.060 (1984 Supp.) provides "such agreement shall reduce the claim by the ... amount." Unless the modifier is meaningless, the term "claim" is broader than the phrase "claim against other persons." Therefore, in the case here, plaintiff's claim is $300,000, her total damages, from which $100,000 must be subtracted.

Secondly, the Washington court's view, when applied to Missouri, that a plaintiff would receive a greater recovery than which he was entitled to receive is in error. Its reliance on the *Lemos* opinion, which supports the formula which reduces the award by plaintiff's comparative fault before subtracting the settlement amount, is not persuasive authority to us. This is because the verdict director used in California is significantly different. In California, the jury apportions fault among the plaintiff, the non-settling defendants *and those other persons whose negligence contributed to the injury.* 83 Cal.App.3d at 117, 147 Cal.Rptr. at 605. In other words, the jury divides the total fault. The Uniform Comparative Fault Act resembles California by requiring apportionment among each claimant, defendant, third party defendant and *person who has been released from liability.* UCFA § 2. 661 S.W.2d at 21. In Missouri, however, fault is only to be apportioned among those at trial and Missouri courts have rejected invitations to change to a total fault apportionment. 710 S.W.2d at 276.

This is a subtle but crucial distinction. ARA simply assumes that a plaintiff such as Mrs. Jensen is 40% at fault *overall.* But she is not. Rather, the jury found her to be 40% at fault *vis a vis* ARA. One might assume that ARA allowed the fault of the Pappas's to be placed on its shoulder, but that is a false assumption. The verdict director does not allow the jury to allocate fault between the plaintiff and the combined group of those who injured her. It does not say: "We, the undersigned jurors, assess the percentages of fault as follows: Kurt Jensen 40% ARA, Tassa Pappas and Jim Pappas 60%." It said Kurt Jensen 40%, ARA 60%.

A recent opinion of the Michigan Supreme Court recognizes this distinction. Using a hypothetical, the court reasoned that a plaintiff who suffers $1,000 in damages and who is $\frac{1}{3}$ at fault should collect approximately $666. Assuming that there are defendants who are also $\frac{1}{3}$ each at fault, they would both pay $333 to plaintiff. But, if one of the defendants settled with plaintiff before trial for the same $333, the recovery would differ for plaintiff depending on which method was used.

Using plaintiff's method, the method that is correct for jurisdictions which do not assign percentages of fault to settling defendants, plaintiff would receive $666. Behold: [1]

| $1,000.00 | Plaintiff's damages |
|---|---|
| 333.00 | Settlement with defendant A |
| $ 666.00 | |
| 333.00 | 50% comparative negligence |
| $ 333.00 | Plaintiff's recovery from non settling defendant. |

One might ask why is 50% comparative fault used? After all, we posited that plaintiff was only $\frac{1}{3}$% at fault. This is because plaintiff's amount of fault—$\frac{1}{3}$%, is *equal* to the non settling defendant's amount—$\frac{1}{3}$%. The settling defendant's $\frac{1}{3}$ is not to be included in the jury's allocation.

Using the method advocated by ARA, the non settling defendant achieves a wind-

1. We will not quarrel with the arithmetic as practiced in Michigan, $1000 - 333 = 667$, not 666, but we also understand the court's reluc-
tance to bog down its example with decimal points.

fall. Although he is *overall* ⅓% at fault, he will pay only half that amount.

| | |
|---|---|
| $1,000.00 | Plaintiff's damages |
| 500.00 | 50% comparative negligence |
| $ 500.00 | |
| 333.00 | Settlement |
| $ 167.00 | Plaintiff's recovery from non settling defendant. |

*Rittenhouse v. Erhart*, 424 Mich. 166, 380 N.W.2d 440, 444 f.n. 3 (1985).

The dissent in *Rittenhouse* attacked the view that the settling defendant's percentage of fault is allocated proportionately among those at trial. Examining the jury instruction used in Michigan, which speaks of "total combined negligence," we cannot say he is wrong.[2] But, as applied to Missouri, his logic fails. One may speculate on how a jury accounts for the settling defendant's fault. Nonetheless, as Missouri's verdict director does not apportion the total fault but, instead, only apportions fault between the trial parties, then we must conclude that the settling parties fault is divided proportionately among the parties at trial.[3]

Further, we believe that plaintiff's formula is the formula more consistent with the legislature's purpose in passing the contribution statute. The purpose of RSMo 537.060 is to encourage settlements. *See* Fischer, The New Settlement Statute: Its History and Effect, 40 J.Mo.B. 13 (1984). If Missouri were to use the formula advocated by ARA this purpose would be defeated. It is intuitive that when parties ponder the decision to settle, they evaluate

**2.** It says: "Using 100 percent as the total combined negligence which proximately caused the injury or damage to the plaintiff, what percentage of such negligence is attributable to the plaintiff?" 380 N.W.2d at 456. (Riley, J., dissenting).

**3.** See the Commissioner's comments to § 2 of the UCFA, 661 S.W.2d at 21. "The more parties joined whose fault contributed to the injury, the smaller the percentage of fault allocated to each of the other parties, whether plaintiff or defendant."

**4.** This underscores the fallacy that plaintiff's fault is a fixed percentage no matter how many defendants are in the picture. 30% is three times 10%. Therefore, a jury following Missou-

many factors. One vital factor is a party's estimation of its own liability.

Assume a case where plaintiff has been damaged $100,000. Assume a jury would find that defendant A is 10% at fault, and defendant B is 60% at fault and that the plaintiff is 30% at fault. If plaintiff and defendant A settle for $10,000 and plaintiff and defendant B go to trial, using plaintiff's formula the trial court will arrive at this amount:

| | |
|---|---|
| $100,000 | Total damages |
| 10,000 | Settlement with A |
| 90,000 | |
| 30,000 | 33⅓% plaintiff's percentage of fault vis a vis B |
| $ 60,000 | Recovery from B |

However, if we use the method advocated by ARA, the following will result:

| | |
|---|---|
| $100,000 | Total damages |
| 33,333 | 33⅓% plaintiff's percentage of fault vis a vis B |
| 66,667 | |
| 10,000 | Settlement with A |
| $ 56,667 | Recovery from B |

Obviously there is incentive for B not to settle for what would be his fair share of $60,000.

Similarly, assume plaintiff does settle with B for $60,000, employing plaintiff's method yields:

| | |
|---|---|
| $100,000 | Total damages |
| 60,000 | Settlement with B |
| 40,000 | |
| 30,000 | 75% of plaintiff's fault *vis a vis* A [4] |
| $ 10,000 | Recovery from A |

Using ARA's method causes this:

| | |
|---|---|
| $100,000 | Total damages |
| 75,000 | 75% of plaintiff's fault *vis a vis* A |

ri's verdict director would divide fault in such a trial, plaintiff 75%, defendant A 25%. Concluding that they would answer plaintiff 30% defendant A 70% means assuming that they cannot follow instructions. A different wording of the instructions (such as in California, Michigan or any UCFA jurisdiction) will provide a different allocation. If the possibility that a jury will misconstrue the instructions or even subvert them by throwing defendant B's fault upon defendant A disturbs us, we should change our instructions, perhaps adopting the UCFA proposal. But what we should not do is limit plaintiff's recovery because we assume a jury will be mistaken sometimes.

```
$ 25,000
  60,000   Settlement with B
$      0   Recovery from A
```

Obviously, ARA's method encourages the obstinate defendant. The benefit of waiting until a co-defendant settles can be substantial. For the same reason, plaintiffs will be unwilling to accept "fair" settlements which will later be undermined. We do not mean that retaining the ARA formula will end settlements; after all, there is sufficient uncertainty in the trial setting to encourage compromise. But its method will discourage settlements, especially between the plaintiff and the minor defendants.

We reverse the judgment of the trial court and enter judgment for plaintiff in the sum of $120,000 in accordance with our opinion and transfer this case to the Supreme Court pursuant to Rule 83.02 as the majority of the participating judges deem this opinion to be contrary to *Schiles v. Schaefer*, 710 S.W.2d 254 (Mo.App.1986) an Eastern District opinion and because of the general interest and important questions involved in this litigation.

GREENE, P.J., CROW, J., and ROBERT G. DOWD, Jr., HAROLD L. LOWENSTEIN, and DEAN WHIPPLE, Special Judges, concur.