Dino ALLEN, Plaintiff-Appellant,

v.

Eddie PERRY, Defendant-Respondent.

No. 50219.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 9, 1986.

Walter D. Floyd, Clayton, for plaintiff-appellant.

John H. Quinn, III, St. Louis, for defendant-respondent.

SATZ, Judge.

This case arises from a three car collision that occurred between plaintiff, Dino Allen (Allen), and defendants, Eddie Perry (Perry), and Eldridge Taylor (Taylor). Plaintiff appeals from the apportionment of a judgment in his favor. We reverse and remand with directions.

Plaintiff Allen sued Perry and Taylor. Perry and Taylor, in turn, filed cross-claims against each other. Immediately before trial, Taylor's counsel disclosed that Taylor and plaintiff had settled plaintiff's claim against Taylor for $1000. Taylor's counsel moved to dismiss Perry's cross-claim against Taylor, but the trial court denied the motion. Nonetheless, Taylor's counsel withdrew from participating in the trial.

Plaintiff's theory of Perry's negligence was failure to yield the right-of-way; thus, plaintiff's verdict directing instruction against Perry instructed the jury to assess Perry's percentage of fault if it found he failed to yield the right-of-way. Perry's theory of plaintiff's comparative fault was failure to swerve; thus, Perry's comparative fault instruction against plaintiff instructed the jury to assess plaintiff's percentage of fault if it found plaintiff failed to swerve. A verdict form was submitted to reflect these findings.

The court also instructed the jury on Perry's cross-claim against Taylor. The instruction and relevant verdict forms directed the jury to apportion the percentage of fault between Perry and Taylor if it found Taylor failed to sound a warning.

The jury assessed plaintiff's total damages at $20,000 and, as percentages of relative fault between plaintiff and Perry, assessed 20% to plaintiff and 80% to Perry. On Perry's cross-claim, the jury assessed Perry to be 75% and Taylor to be 25% at fault. Following a formula which it believed properly incorporated the concept of comparative fault, the court apportioned plaintiff's total damage award by incorporating into its apportionment the relative fault of all the parties and entered a judgment of $11,400 in favor of plaintiff against Perry. Plaintiff appeals from this judgment.

Plaintiff contends the trial court's method of apportioning his total damage award of $20,000 was incorrect. We agree.

The problem of apportioning plaintiff's total damage award here stems from the method used by our Supreme Court to resolve a conflict it noted in *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983). Section 537.060 RSMo. 1978 prescribes a method of apportioning a damage award against multiple tortfeasors when one tortfeasor has obtained a release prior to judgment. (Appendix) This method of apportionment conflicts with the method outlined in § 6 of the Uniform Comparative Fault Act. (UCFA) (Appendix) After noting this conflict, the Court, in *Gustafson*, invited the General Assembly to reconsider the language of § 537.060 but stated:

"in the meantime, ..., insofar as § 6 [UCFA] is inconsistent with § 537.060, we will defer to the terms of the statute." *Id.*, fn. 10 at 15–16.

Subsequent to *Gustafson*, this Court, in *Schiles v. Schaefer*, 710 S.W.2d 254 (Mo. App.1986), and the Southern District Court, in *Jensen v. ARA Services, Inc.*, 719 S.W.2d 121 (Mo.App.S.D., 1986), were confronted with putting into practice the resolution of the conflict reached by *Gustafson*. In *Schiles* and in *Jensen*, one or more of the multiple tortfeasors obtained a release prior to trial. In each case, the appellate

court reversed the judgment as apportioned by the trial court and used its own method for apportioning the plaintiff's total damage award among the plaintiff and the remaining tortfeasors, *Schiles,* and between the plaintiff and the remaining tortfeasor, *Jensen.* *Schiles* at 277; *Jensen* at 122–123, 125. The two methods of apportionment used, however, are not the same. No useful purpose would be served by discussing the reasons used by each Court to justify its particular method of apportionment or by now following one method instead of the other. Each Court sets out its reasons in lucid detail, *Schiles* at 277; *Jensen* at 122–126, and the Southern District Court has transferred its opinion in *Jensen* to our Supreme Court, under Rule 83.02, because its opinion conflicts with this Court's opinion in *Schiles.* We do note, however, the different results that would be reached in apportioning the present plaintiff's award under the different methods used in *Jensen* and *Schiles:*

| Schiles | | Jensen | |
|---|---|---|---|
| $20,000 | – P's total award | 20,000 | – P's total award |
| 4,000 | – 20% – P's fault | 1,000 | – Settlement/release |
| 16,000 | | 19,000 | |
| 1,000 | – Settlement/release | 3,800 | – 20% – P's % fault |
| 15,000 | – Judgment for P | 15,200 | – Judgment for P |

The trial court here was not blessed with these conflicting formulas and differing results. Understandably, it used a third and different formula and reached a third and different result: $11,400—judgment for plaintiff. Thus, under either *Schiles* or *Jensen,* the present judgment is incorrect. Its correction depends upon our Supreme Court's resolution of the conflict between *Schiles* and *Jensen.* For purposes of procedural economy, we should reverse the present judgment, remand this cause and direct the trial court to enter the appropriate judgment after and in accord with the Supreme Court's disposition of the conflict raised in *Jensen.* To insure the propriety of this procedure, we first dispose of the remaining issues before us.

This three car collision occurred near the intersection of Cora and Natural Bridge. At this intersection, Cora runs north and south and Natural Bridge runs east and west. Prior to the collision, Perry was stopped at a major stop sign for northbound traffic on Cora at Natural Bridge. Taylor was heading west, on the north side of Natural Bridge, just east of Cora. Plaintiff was eastbound, on the south side of Natural Bridge, west of Cora. There are no stop signs at the intersection for traffic on Natural Bridge. Perry started to make a left turn onto Natural Bridge, and, while in the intersection, the front of his car struck Taylor's car. Both cars spun around, and one or both cars then collided with plaintiff's car.

As previously noted, plaintiff's theory of negligence against Perry was Perry's failure to yield the right-of-way, and Perry's theory of plaintiff's comparative fault was plaintiff's failure to swerve. Plaintiff contends the court erred in submitting the issue of his comparative fault to the jury, because there was insufficient evidence to show he failed to swerve. Moreover, plaintiff argues, the evidence shows he did swerve and also shows the collision could not have been avoided even if he would have swerved sooner. We disagree.

To determine whether this submission was supported by sufficient evidence, we view the evidence and inferences in the light most favorable to the submission and disregard all contrary evidence and inferences. *See Finninger v. Johnson,* 692 S.W.2d 390, 394 (Mo.App.1985); *McColgin v. Morgan,* 592 S.W.2d 263, 266 (Mo.App. banc 1979). Here, the evidence and reasonable inferences show plaintiff had the time, distance, means and ability to have avoided the collision by swerving. Specifically, the evidence shows plaintiff was in the traffic lane closest to the center line as he approached the intersection of Cora and Natural Bridge from the west. When he was about 220 feet from the intersection, he saw Perry move north, into the intersection. Plaintiff was then going 30 mph. When he was 130 to 190 feet from the intersection, he saw Perry's car and Taylor's car collide in the intersection. Plaintiff said he immediately applied his brakes and explained: "after I saw [them] hit, I

was coming to a complete stop ... because I didn't know ... whether one was going to swerve or not." He, thus, acknowledged the possibility of one or both of those cars crossing the center line into his lane of traffic. Plaintiff was then going 20 mph or 30 feet/second. At 130 feet away from the collision, he had 4.3 seconds to swerve to his right, and, at 190 feet away, he had 6.3 seconds to swerve. Normal reaction time is ¾ seconds. *E.g., Sandifer v. Hamilton,* 626 S.W.2d 439, 441 (Mo.App.1981). Plaintiff therefore had sufficient time and distance to swerve and avoid his car colliding with another in his lane of traffic. *See McCreary v. Conroy,* 611 S.W.2d 234, 235 (Mo.App.1980).

Plaintiff argues he did swerve to the right as soon as he could. According to plaintiff and his passengers, another car was in the traffic lane to their right, and plaintiff had to wait for it to pass before swerving. By that time, plaintiff argues, he was unable to avoid colliding with Taylor and Perry.

Plaintiff's argument assumes he collided with Taylor and Perry in the traffic lane to plaintiff's right and not in the traffic lane closest to the center line. Other evidence supports a contrary conclusion.

Without objection, the investigating police officer testified he believed the impact with plaintiff's car occurred in the traffic lane immediately south of and adjacent to the center line on Natural Bridge. Taylor's car, which struck plaintiff's car on the left rear side, ended up straddling the center line. The reasonable inference is plaintiff did not swerve to avoid the collision. It is also reasonable to infer there was no car to plaintiff's right. No one could describe the passing car, nor did it stop after the accident. Apparently, the jury chose to believe this evidence and draw these inferences and chose to disbelieve plaintiff's evidence. There was, therefore, sufficient evidence to submit the issue of plaintiff's failure to swerve to the jury.

The next issue centers on the settlement agreement between plaintiff and Taylor. Perry contends plaintiff "failed to offer or introduce a release into evidence" and, therefore, Perry argues, plaintiff failed to establish the release was entered into in "good faith" as required by § 537.060. Without this showing, Perry reasons, there is no proof Taylor was properly discharged as a party defendant.

If Perry's argument is correct, we must, in our remand, direct the trial court, at least, to establish the bona fides of the settlement agreement in order for the court to factor in the amount of the settlement when plaintiff's damage award is properly apportioned. We do not agree with Perry's argument and, thus, find no need for the trial court to establish the bona fides of the settlement agreement on remand.

The settlement agreement was first discussed in a conference just prior to trial. Taylor's counsel told the trial court:

> [He] would like to file a stipulation for dismissal[,] release and satisfaction of judgment against [his client]. That's an agreement between the plaintiff and Mr. Taylor to settle the claim against Mr. Taylor for $1,000, and I think that the language of the release is such that we have reached an agreement then brought [sic] our peace....

Perry's counsel neither questioned nor objected to this statement. Then, just prior to submission of the case to the jury, the court explicitly found: "the record previously reflects that Defendant Taylor enter[ed] into a settlement agreement with Plaintiff Allen." Perry's counsel did take issue with this finding. He said he still had not seen a copy of the release, and he argued the record did not reflect "whether the settlement was in good faith".

■ We have examined the record on appeal. It does not disclose a written settlement agreement. This omission, however, is not fatally defective. The record does show Taylor's counsel explicitly stated that Taylor and Allen had entered into a settlement agreement. This statement was made just prior to trial. At that time, Perry's counsel raised no question about

the agreement. With no question raised, the able and experienced trial judge, ready to proceed to trial, could properly find the settlement agreement, whether oral or written, had been reached. *See, e.g., Langley v. Langley,* 607 S.W.2d 211 (Mo.App. 1980). This squares with the express and precise finding subsequently made by the judge just prior to the submission of the case: "the record previously reflects that Defendant Taylor enter[ed] into a settlement agreement with plaintiff Allen." Admittedly, at that time, Perry's counsel questioned the bona fides of the agreement. But the previous explicit statement of Taylor's counsel, made without question or objection, was, we believe, sufficient to establish the existence of the settlement agreement, and, once its existence was established, the burden of going forward shifted to Perry to show the agreement was not entered into in good faith. *See, e.g., Foster v. Aetna Life Ins. Co.,* 176 S.W.2d 482, 485–86 (Mo.1943); *Wolf v. St. Louis Public Service Co.,* 357 S.W.2d 950, 954 (Mo.App.1962); *Scott v. Missouri Ins. Co.,* 246 S.W.2d 349, 354 (Mo.App.1952).[1]

◼ The final issue before us centers on the trial court requiring the jury to apportion fault between Perry and Taylor. Both *Jensen* and *Schiles* teach the apportionment of fault between the settling tortfeasor, Taylor, and the non-settling tortfeasor, Perry, was unnecessary. Since the non-settling tortfeasor, Perry, cannot secure contribution for the settling tortfeasor, Taylor, § 537.060, the apportionment of fault between them is irrelevant. Not having the benefit of the teaching of either *Schiles* or *Jensen,* the trial court here did direct the jury to apportion the relative fault between Perry and Taylor. Arguably, plaintiff's percentage of fault relative to Perry *and* Taylor would vary from plaintiff's percentage of fault relative

to Perry *alone.* The question, thus, arises whether, on remand, we should order a new trial and limit the jury to apportioning relative fault only between plaintiff and Perry. We think not.

◼ The instructions given here did not submit plaintiff's fault relative to Perry *and* Taylor. The jury was instructed to determine first the relative fault between plaintiff and Perry and, only then, determine the relative fault between Perry and Taylor. Insofar as Taylor was concerned, the jury was directed to determine his percentage contribution to Perry's fault. Thus, plaintiff's degree of relative fault, as presently established, would not vary even if the relative fault between Taylor and Perry had not been submitted to the jury. Consequently, we find no need for retrial and resubmission.

Accordingly, we reverse the judgment, remand this cause and direct the trial court to enter the appropriate judgment after and in accord with the Supreme Court's disposition of the conflict raised in *Jensen v. ARA Services, Inc.,* 719 S.W.2d 121 (Mo. App.S.D., 1986).

CRANDALL, P.J., and PUDLOWSKI, J., concur.

### APPENDIX

§ 537.060 RSMo. Supp. 1984:

Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract. When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one or two or more persons liable in tort for the same injury or wrongful death, such agreement shall

---

1. Because of the peculiar procedural posture of this case, we ordered the entire trial file from the trial court. On the day Taylor's counsel disclosed the existence of the settlement agreement, the minute entry reads:

   Settlement between plaintiff and defendant Taylor spread on the record. Copies of Re-

lease Stipulation for Dismissal and Partial Satisfaction of judgment filed.

The file stamp on the written documents, "Release," "Stipulation For Dismissal", "Partial Satisfaction of Judgment," however, shows the date of filing as "Feb. 26, 1986", four days after the verdict was reached.

not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. The agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor. The term "noncontractual indemnity" as used in this section refers to indemnity between joint tort-feasors culpably negligent, having no legal relationship to each other and does not include indemnity which comes about by reason of contract, or by reason of vicarious liability."

Uniform Comparative Fault Act § 6, 12 U.S.A. 45–46 (Supp.1986)

A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, determined in accordance with the provisions of Section 2.