Ronda G. JENSEN, Plaintiff-Appellant,

v.

ARA SERVICES, INC.,
Defendant-Respondent.

No. 69030.

Supreme Court of Missouri,
En Banc.

Sept. 15, 1987.

Michael W. Manners, Robert J. Graeff, Independence, for plaintiff-appellant.

Stephen P. Carlton, Carthage, for defendant-respondent.

PER CURIAM.

Plaintiff Ronda G. Jensen appeals from a judgment in a jury tried case which awarded her $80,000 in damages for the wrongful death of her husband Karl Jensen.

The facts, as stipulated by the parties, are as follows:

On February 24, 1980, plaintiff's decedent, Karl Jensen, was killed in a traffic accident when his motorcycle collided with the rear of an unlighted truck parked on a dark street. The truck was operated by Tasso Pappas and owned by Jim Pappas. Prior to the accident Tasso parked the truck on the pavement of St. Louis Avenue in Joplin so he could load magazines into a van parked on the shoulder of the road. The van belonged to ARA Services, Inc., ("ARA"). On February 17, 1981, plaintiff filed suit against Tasso Pappas, Jim Pappas and ARA in Jasper County Circuit Court. In April of 1983 the cause proceeded to trial and resulted in a verdict for all defendants upon which the trial court entered judgment. Because of instructional error, that judgment was reversed by the court of appeals on December 7, 1984, *Jensen v. Pappas*, 684 S.W.2d 524, and remanded for a new trial.

After remand plaintiff settled her claim against Tasso and Jim Pappas for $100,000, the limit of their liability insurance coverage. On September 10, 1985, plaintiff proceeded to trial on her claim against ARA. Plaintiff's cause against ARA was submitted on the theory that ARA negligently caused Tasso Pappas to park his truck on the pavement. Defendant submitted a contributory fault instruction. On September 11, 1985, the jury returned a verdict in favor of plaintiff, finding that her damages totaled $300,000 and that the relative fault of decedent and ARA were, respectively, 40% and 60%.

Thereafter, plaintiff prepared two proposed judgment entries which she supplied to the trial court. The difference in the two entries was based on how the effect of decedent's fault was calculated, whether on the total amount of plaintiff's damages or merely on that portion for which ARA was liable. The differences are set out as follows:

### Fault deducted from all damages

| | |
|---|---:|
| Plaintiff's damages | $300,000 |
| Less decedent's fault ($300,000 × 40%) | −120,000 |
| | 180,000 |
| Less Pappas settlement | −100,000 |
| Judgment against ARA | $ 80,000 |

### Fault deducted from damages for which ARA is liable

| | |
|---|---:|
| Plaintiff's damages | $300,000 |
| Less settlement | −100,000 |
| Maximum amount for which ARA can be liable | 200,000 |
| Less decedent's fault ($200,000 × 40%) | − 80,000 |
| Judgment against ARA | $120,000 |

The trial court entered judgment against ARA for $80,000 on February 11, 1986. The court of appeals, 719 S.W.2d 121 (Mo. App.1986), reversed, and transferred the case here because of perceived conflict with *Schiles v. Schaefer*, 710 S.W.2d 254 (Mo.App.1986). We make use of the opinion of Judge James A. Pudlowski visiting in the Southern District, without use of quotation marks.

Plaintiff candidly admits that her method of calculating damages was counter to the method prescribed in that case. There the Eastern District of the Court of Appeals examined the damage formula used by the trial court in a wrongful death action when plaintiff's decedent had been 2% at fault, which produced the following:

| | |
|---|---|
| $1,500,000 | Total damages |
| − 250,000 | Settlement from St. Joseph's Hospital |
| 1,250,000 | |
| 837,500 | 67% defendant Dr. Schaefer's fault |
| 262,500 | 21% defendant Dr. Butsch's fault |
| 125,000 | 10% defendant Ernst Radiology's fault |
| 25,000 | 2% plaintiff's decedent's fault |

The Eastern District modified the judgment using this formula:

| | |
|---|---|
| $1,500,000 | Total damages |
| 30,000 | 2% plaintiff's decedent's fault |
| 1,470,000 | |
| 250,000 | Settlement from St. Joseph's Hospital |
| 1,220,000 | Remaining damages |
| 834,082 | 67% defendant Dr. Schaefer's fault |
| 261,428 | 21% defendant Dr. Butsch's fault |
| 124,490 | 10% defendant Ernst Radiology's fault |

The Eastern District posited that neither *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983), § 537.060, RSMo 1986, nor the Uniform Comparative Fault Act explicitly answered the question presented. In selecting its particular formula, the court did not cite to any other authority for its decision. 710 S.W.2d at 266–77. Rather, the court based its holding on the fact that it believed the formula used by the trial court the formula advocated by the plaintiff in the case *sub judice,* "erroneously awarded plaintiffs more than they would have recovered had there been no settlement." *Id.* at 277.

ARA cites us to *Scott v. Cascade Structures,* 100 Wash.2d 537, 673 P.2d 179 (en banc 1983) to support the trial court's and the Eastern District's method of calculation. There, the Supreme Court of Washington refused to follow the precedent of an earlier Washington opinion and, instead, subtracted the settlement payment after factoring in plaintiff's negligence. *Id.* at 181–82. In its opinion the majority interpreted the contribution statute which said in pertinent part: "the claim of the releasing person against other persons is reduced by the amount paid pursuant to the agreement. . . ." RCW 4.22.060(2) (1981).

To the Washington Supreme Court the key word is "claim." The court rejected the view that the claim was the total damages sustained by plaintiff, and, instead, construed it to be the ultimate amount attributable to the negligence of others. The court bases its interpretation on the statute's legislative history which said that the "final judgment of the claimant is reduced by the amount paid for a release. . . ." By using the term "final judgment," the court concluded that the Washington legislature intended the settlement amount be deducted after reducing for the plaintiff's comparative negligence. 673 P.2d at 182.

The Washington Supreme Court offered two additional reasons for its holding. First, it stated that if it were to deduct the settlement before reducing the award to reflect plaintiff's negligence, the percentage of fault chargeable to the plaintiff "would fall below. the actual percentage determined by the jury." That implies that this result would be inconsistent with the "purpose of the contribution statute [which] is to ensure that a plaintiff receives that to which he or she is entitled." *Id.* at 183. Secondly, the court found that its result was consistent with *Lemos v. Eichel,* 83 Cal.App.3d 110, 147 Cal.Rptr. 603 (1978). *Id.*

ARA's reliance on *Scott* is misplaced. First, the Washington contribution statute is dissimilar to Missouri's. In Washington, the trial court subtracts the releasing person's claim *against other persons.* The claim must be adjusted for the default of those who are not "other persons" such as the plaintiff and, perhaps, the settling defendant. In other words, at least plaintiff's fault must be deducted. In Missouri, the term "claim" is not restricted. Section 537.060, RSMo 1986, provides "such agreement reduce the claim by the . . . amount." Unless the modifier is meaningless, the term "claim" is broader than the phrase "claim against other persons." Therefore, in the case here, plaintiff's claim is $300,000, her total damages from which $100,000 must be subtracted.

Secondly, the Washington court's view, when applied to Missouri, that a plaintiff would receive a greater recovery than which he was entitled to receive is in error.

Its reliance on the *Lemos* opinion, which supports the formula which reduces the award by plaintiff's comparative fault before subtracting the settlement amount, is not persuasive authority to us. This is because the verdict director used in California is significantly different. In California, the jury apportions fault among the plaintiff, the nonsettling defendants *and those other persons whose negligence contributed to the injury.* 83 Cal.App.3d at 116, 147 Cal.Rptr. at 605. In other words, the jury divides the total fault. The Uniform Comparative Fault Act resembles California's by requiring apportionment among each claimant, defendant, third-party defendant and *person who has been released from liability.* UCFA § 2(a)(2), *Gustafson,* 661 S.W.2d at 21. In Missouri, however, fault is only to be apportioned among those at trial and Missouri courts have rejected invitations to change to a total fault apportionment. *Schiles,* 710 S.W.2d at 276.

This is a subtle but crucial distinction. ARA simply assumes that a plaintiff such as Mrs. Jensen is 40% at fault *overall.* But she is not. Rather, the jury found her to be 40% at fault vis-a-vis ARA. One might assume that ARA allowed the fault of the Pappases to be placed on its shoulder, but that is a false assumption. The verdict director does not allow the jury to allocate fault between the plaintiff and the combined group of those who injured her. It does not say: We, the undersigned jurors, assess the percentages of fault as follows: Kurt Jensen 40% ARA; Tasso Pappas and Jim Pappas 60%. It said Kurt Jensen 40%, ARA 60%.

A recent opinion of the Michigan Supreme Court recognizes this distinction. Using a hypothetical, the court reasoned that a plaintiff who suffers $1,000 in damages and who is ⅓ at fault should collect approximately $666. Assuming that there are defendants who are also ⅓ each at fault, they would both pay $333 to plaintiff. But, if one of the defendants settled with plaintiff before trial for the same $333, the recovery for plaintiff would differ depending on which method was used.

Using plaintiff's method, the method that is correct for jurisdictions which do not assign percentages of fault to settling defendants, plaintiff would receive $666. Behold:[1]

|            |                                          |
|------------|------------------------------------------|
| $1,000.00  | Plaintiff's damages                      |
| 333.00     | Settlement with defendant A              |
| $ 666.00   |                                          |
| 333.00     | 50% comparative negligence               |
| $ 333.00   | Plaintiff's recovery from nonsettling defendant. |

One might ask: why is 50% comparative fault used? After all, we posited that plaintiff was only ⅓ at fault. This is because plaintiff's amount of fault — ⅓, is *equal* to the nonsettling defendant's amount — ⅓. The settling defendant's ⅓ is not to be included in the jury's allocation.

Using the method advocated by ARA, the nonsettling defendant achieves a windfall. Although he is *overall* ⅓ at fault, he will pay only half that amount.

|            |                                          |
|------------|------------------------------------------|
| $1,000.00  | Plaintiff's damages                      |
| 500.00     | 50% comparative negligence               |
| $ 500.00   |                                          |
| 333.00     | Settlement                               |
| $ 167.00   | Plaintiff's recovery from nonsettling defendant |

*Rittenhouse v. Erhart,* 424 Mich. 166, 380 N.W.2d 440, 444, n. 3 (1985).

The dissent in *Rittenhouse* attacked the view that the settling defendant's percentage of fault is allocated proportionately among those at trial. Examining the jury instruction used in Michigan, which speaks of "total combined negligence," we cannot say he is wrong.[2] But, as applied to Missouri, his logic fails. One may speculate on how a jury accounts for the settling defendant's fault. Nonetheless, as Missouri's

---

1. We will not quarrel with the arithmetic as practiced in Michigan, 1000 − 333 = 667, not 666, but we also understand the court's reluctance to bog down its example with decimal points.

2. It says: "[u]sing 100 percent as the total combined negligence which proximately caused the injury or damage to the plaintiff, what percentage of such negligence is attributable to the plaintiff?" 380 N.W.2d at 456 (Riley, J., dissenting).

verdict director does not apportion the total fault but, instead only apportions fault between the trial parties, then we must conclude that the settling parties fault is divided proportionately among the parties at trial.[3]

Further, we believe that plaintiff's formula is the formula more consistent with the legislature's purpose in passing the contribution statute. The purpose of § 537.060 is to encourage settlements. *See* Fischer, *The New Settlement Statute: Its History and Effect*, 40 J.Mo.B. 13 (1984). If Missouri were to use the formula advocated by ARA this purpose should be defeated. It is intuitive that when parties ponder the decision to settle, they evaluate many factors. One vital factor is a party's estimation of its own liability.

Assume a case where plaintiff has been damaged $100,000. Assume a jury would find that defendant A is 10% at fault, and defendant B is 60% at fault and that the plaintiff is 30% at fault. If plaintiff and defendant A settle for $10,000 and plaintiff and defendant B go to trial, using plaintiff's formula the trial court will arrive at this amount.

| | |
|---|---|
| $100,000 | Total damages |
| 10,000 | Settlement with A |
| 90,000 | |
| 30,000 | 33⅓% plaintiff's percentage of fault vis-a-vis B |
| $ 60,000 | Recovery from B |

However, if we use the method advocated by ARA, the following will result:

| | |
|---|---|
| $100,000 | Total damages |
| 33,333 | 33⅓% plaintiff's percentage of fault vis-a-vis B |
| 66,667 | |

3. See the Commissioners' Comment to § 2 of the UCFA, 661 S.W.2d at 21. "The more parties joined whose fault contributed to the injury, the smaller the percentage of fault allocated to each of the other parties, whether plaintiff or defendant."

4. This underscores the fallacy that plaintiff's fault is a fixed percentage no matter how many defendants are in the picture. 30% is three times 10%. Therefore, a jury following Missouri's verdict director would divide fault in such a trial, plaintiff 75%, defendant A 25%. Concluding that they would answer plaintiff

| | |
|---|---|
| $10,000 | Settlement with A |
| $56,667 | Recovery from B |

Obviously there is incentive for B not to settle for what would be his fair share of $60,000.

Similarly, assume plaintiff does settle with B for $60,000, employing plaintiff's method yields:

| | |
|---|---|
| $100,000 | Total damages |
| 60,000 | Settlement with B |
| 40,000 | |
| 30,000 | 75% of plaintiff's fault vis-a-vis A [4] |
| $ 10,000 | Recovery from A |

Using ARA's method causes this:

| | |
|---|---|
| $100,000 | Total damages |
| 75,000 | 75% of plaintiff's fault vis-a-vis A |
| 25,000 | |
| 60,000 | Settlement with B |
| $ 0 | Recovery from A |

Obviously, ARA's method encourages the obstinate defendant. The benefit of waiting until a co-defendant settles can be substantial. For the same reason, plaintiffs will be unwilling to accept "fair" settlements which will later be undermined. We do not mean that retaining the ARA formula will end settlements; after all, there is sufficient uncertainty in the trial setting to encourage compromise. But its method will discourage settlements, especially between the plaintiff and the minor defendants.

We reverse the judgment of the trial court and remand with directions to enter judgment for plaintiff in the sum of $120,000 in accordance with our opinion.

BILLINGS, C.J., and BLACKMAR, RENDLEN and HIGGINS, JJ., concur.

30%, A 70%, means assuming that they cannot follow instructions. A different wording of the instructions (such as in California, Michigan or any UCFA jurisdiction) will provide a different allocation. If the possibility that a jury will misconstrue the instructions or even subvert them by throwing defendant B's fault upon defendant A disturbs us, we should change our instructions, perhaps adopting the UCFA proposal. But what we should not do is limit plaintiff's recovery because we assume a jury will be mistaken sometimes.

ROBERTSON, J., concurs in result in separate opinion filed.

WELLIVER, J., dissents in separate opinion filed.

DONNELLY, J., dissents and concurs in separate dissenting opinion of WELLIVER, J.

ROBERTSON, Judge, concurring in result.

In my view, *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983), and Section 537.060 mandate the conclusion reached by the principal opinion—a result which I believe both fails the test of fairness and encourages only partial settlement of lawsuits—a result unjustified by the principal opinion's reliance on the intent of the jury. I therefore concur in result only.

In *Gustafson*, this Court adopted "insofar as possible" the Uniform Comparative Fault Act (U.C.F.A.), establishing a system of pure comparative fault for tort actions in Missouri. The meaning of the phrase "insofar as possible" has been the subject of great debate, and, as was revealed clearly in *Lippard v. Houdaille Industries, Inc.*, 715 S.W.2d 491 (Mo. banc 1986), held a different meaning even for those judges who formed the *Gustafson* majority. Despite disagreement as to the meaning of "insofar as possible," *Gustafson* clearly states that a conflict between the U.C.F.A. and Section 537.060 must be resolved in favor of the legislatively enacted statute.[1]

Under Section 2 of the U.C.F.A., the court is to instruct the jury to make findings indicating "the percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under Section 6." Thus, under the U.C.F.A., the settling defendant's fault is considered and assessed a percentage value by the jury. The plaintiff's claim against the remaining defendants is then reduced by the amount representing the settling defendant's percentage of fault, i.e., his "equitable share."

In contrast, Section 537.060 provides no means by which to determine a settling defendant's equitable share. Rather, the plaintiff's claim is reduced by the actual settlement amount. The settling defendant's equitable share is therefore of no relevance; he is dismissed from the action for all purposes, including allocation of fault.

Section 537.060 provides that a settlement agreement "shall reduce the claim by the stipulated amount of the agreement or in the amount of consideration paid, whichever is greater." Insofar as the statute does not specifically restrict the term "claim" to mean the amount attributable to the negligence of others, it would appear that a literal construction of Section 537.060 mandates the conclusion reached by the principal opinion: the settlement amount must be deducted from plaintiff's total damage award before adjustment for percentages of fault.

Were not this conclusion mandated by *Gustafson* and Section 537.060, however, I would endorse the formula selected by the Eastern District Court of Appeals in *Schiles v. Schaefer*, 710 S.W.2d 254 (Mo.App. 1986). Under the *Schiles* method, the amount of settlement is deducted after the total damage award is adjusted for the plaintiff's fault. In this way, the plaintiff's "claim" is, in my view appropriately, considered to be the amount attributable to the negligence of others.

Without relying on Section 537.060, the principal opinion finds—perhaps as a matter of common law—the settling defendant's absence from the determination of fault to be of dispositive importance. I cannot agree.

The *Schiles* method distributes financial responsibility according to the percentage of fault assigned by the jury. In contrast, the formula adopted by the principal opinion takes into account the absence of the settling defendant, in effect redistributing percentages of fault to reflect the assess-

---

1. The conflict between Section 537.060 and Section 6, U.C.F.A. was specifically recognized in *Gustafson*, 661 S.W.2d at 15–16 n. 10, wherein this Court conceded that insofar as Section 6 is inconsistent with Section 537.060, the statute must control.

ment of relative blame as between the plaintiff and remaining defendant(s) as a constant.[2] This calculation assumes that the jury assesses percentages of fault in relation to the parties.

In my view this assumption is incorrect. The jury's award of damages represents the total extent of injury suffered by the plaintiff. A pure system of comparative fault reduces the amount of damages to the extent of the plaintiff's own responsibility in producing his injury. *See* Schwartz, Comparative Negligence, sec. 12.7 at 206–207 (1974 and Supp.1981); Garrison, Missouri Comparative Fault Treatise: Theory and Practice, UMKC C.L.E., sec. 2.1 at 3 (1986). Therefore, the plaintiff's "claim" should represent that portion of the total injury attributable to others. While the plaintiff's individual responsibility for his injury may be viewed as proportionate to the competing blameworthiness of others,[3] the logical axis around which percentages of fault revolve is injury.

Allocation of actual fault among all those who contributed to the plaintiff's injury is more likely the exception than the rule under our current practice, regardless of the mechanics used to determine recovery. Whether a potential tort-feasor is absent from the distribution of fault because service cannot be obtained, because he has settled with the plaintiff, or for any number of other reasons, his contribution to the totality of injury-producing negligence is unknown to the jury. Attaching consequence to the absence of a potential tort-feasor whose fault is unknown to the jury is an exercise in futility;[4] a jury cannot consider what it does not have before it.

The principal opinion bases its conclusion in part upon the desirability of encouraging settlements. The formula adopted, however, does not further that appropriate policy. Instead, it and Section 537.060 serve only to encourage partial settlements since the plaintiff stands to reap a windfall if he settles with one/some but not all of the defendants.

In my view, the *Schiles* formula is more consistent with a system of pure comparative fault than the formula followed by the principal opinion or that adopted by Section 537.060. I am constrained to concur in result only in deference to the language of Section 537.060.

WELLIVER, Judge, dissenting.

I respectfully dissent. In my view, *Gustafson v. Benda*, 661 S.W.2d 11, 15–16, n. 10 (Mo. banc 1983), directs a conclusion opposite that reached by the principal opinion regarding § 537.060, RSMo 1978. This is suggested in the opinion of Robertson, J. concurring in result and in *Schiles v. Schaefer*, 710 S.W.2d 254, 275–77 (Mo.App. 1986).

The court of appeals opinion suggests that we have two alternatives: (1) first deduct the settlement figure from damages as found in a trial between plaintiff and defendant and then apportion plaintiff's and defendant's liability on the basis of fault found in the trial between the two parties, or (2) reduce plaintiff's damages as found in a trial between plaintiff and defendant by plaintiff's percentage of fault as there found, less the settlement. I respectfully suggest that this case cries out for consideration of a third alternative, which now would fully embrace section 6 of the Uniform Comparative Fault Act (U.C.F.A.). Since the third alternative could not be made applicable to this case, it is necessary to make an interim choice between the

---

**2.** The principal opinion underscores what it perceives to be the critical distinction between jurisdictions which do and do not assign percentages of fault to settling defendants with an example taken from a "recent opinion of the Michigan Supreme Court." The hypothetical assumes that the jury's assessment of fault is made relative to the parties and that the percentage relationship of blame between them is constant.

**3.** U.C.F.A. sec. 2 comment.

**4.** In some cases, as where a party settles during the course of trial, the jury is aware that there are more persons to whom fault may be attached than those ultimately considered. Whether, or to what extent, the jury will "reallocate" percentages of fault to account for the absent settlor is speculative at best. In any event, the distribution of fault among those left at trial is still made in reference to total injury and not "total negligence."

alternatives discussed by the court of appeals.

The amount the parties arrived at through settlement negotiations constitutes an estimate, however rough, of the released party's "equitable share" of responsibility for the injury. The essence of settlement is an estimation by the settling parties of what a jury might conclude based on evidence in a trial involving all of the parties. A plaintiff is willing to accept "X" dollars now, knowing that a judgment award might be more or less. The settling defendant, of course, entertains a converse proposition. Through arms-length negotiation, it is not incredulous to conclude that a rough estimate of "equitable share" is derived. This is the "equitable share" contemplated by sections 2(a) and 6 of the U.C.F.A. The majority chose to subtract this amount from plaintiff's unadjusted recovery against the remaining defendants. This in fact is a partial application of U.C.F.A., section 6, in a case where the settling defendant's percentage of fault has not been determined by a jury, and is in fact unknown. The method used by the majority tends to subvert the role of the jury as arbiter of fault apportionment.

Promotion of settlements is both the stated and ideal goal of § 537.060. However, under the statute, the jury is forced to apportion fault among "remaining parties," based only on the evidence at the subsequent trial. The settling party is not considered in the computation of fault. Hence, the prior settlement with a released tortfeasor has little to do with the "claim against the remaining defendants" from the perspective of the jury. I therefore agree with Robertson, J. that the approach of *Schiles v. Schaefer*, 710 S.W.2d 254, 277 (Mo.App.1986), is the better way, under current law, by which a claim can be apportioned consistent with the manner which we instruct juries to undertake that determination. As was observed in *Schiles*, "[t]he settlement should not change the amount of damages plaintiffs can recover, it should only reduce the amount that the non-settling defendants are responsible for." *Id.* at 277. 6.

*Were these my only choices*, I would hold that any settlement amount is to be subtracted from the plaintiff's total damage award after adjusting plaintiff's total recovery, as determined by the jury without regard to any intervening settlement, for his own fault. This, in my opinion, better reconciles the legislature's directions in § 537.060 and comes closer to maintaining the integrity of the Missouri jury panel as the arbiter of comparative fault.

However, neither the result of the principal opinion nor the above result reaches the real issue involved in such cases. Application of either the formula adopted by the majority herein or the "alternative" proposed by the *Schiles* court results in adjusting upward or downward what the remaining defendants are obligated to pay, regardless of their true percentages of fault. One, in some cases, is more favorable to the plaintiff, and the other, in certain cases, is more favorable to those defendants unwilling to "gamble" on a settlement amount. The application of either rule does not square with our ultimate goal of fairness. In *A Theory of Justice*, John Rawls states that the basic or "original position" for "justice as fairness" begins with all individuals on an equal basis with each other. J. Rawls, *A Theory of Justice* 12 (1971).

> This ensures that no one is advantaged or disadvantaged in the choice of principles by the outcome of natural chance or the contingency of social circumstances. Since all are similarly situated and no one is able to design principles to favor his particular condition, the principles of justice are the result of a fair agreement or bargain.

*Id.*

The importance of considering the third alternative is apparent. The only totally fair manner by which fault can be distributed in such circumstances is through application of section 6 of the U.C.F.A. Such application places the "fact of settlement" on a more neutral footing, making it more desirable and more appealing insofar as the merits of the case are concerned. "In my view, a ... [tort system] should strive for

*fairness* 'in assigning rights and duties and in defining the appropriate division of social advantages.' " *Lippard v. Houdaille Indus., Inc.,* 715 S.W.2d 491, 500 (Mo. banc 1986) (Donnelly, J., dissenting) (quoting J. Rawls, *A Theory of Justice* 10 (1921)) (emphasis added).

It should be noted that among other things, § 537.060 made no mention of whether the settling defendant should remain in the action for the sole purpose of having his percentage of liability, his "equitable share" determined, our only law on that subject being *State ex rel. Maryland Heights Contractors, Inc., v. Ferriss,* 588 S.W.2d 489 (Mo. banc 1979), a case decided after *Missouri Pacific R. R. v. Whitehead and Kales,* 566 S.W.2d 466 (Mo. banc 1978), but before *Gustafson.*

The legislature, while having failed to deal directly with § 537.060, has spoken on the subject as it relates to health care provider tort actions. The legislature there adopted the section 6 U.C.F.A. approach in total and almost verbatim:

538.205. Definitions.—As used in sections 538.205 to 538.230, the following terms shall mean:

(2) "Equitable share", the share of a person or entity in an obligation that is the same percentage of the total obligation as the person's or entity's allocated share of the total fault, as found by the trier of fact;

. . . .

538.230. Apportionment of fault authorized—defendants jointly and severally liable, when—release of one defendant, effect—1. In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services where fault is apportioned among the parties and persons released pursuant to subsection 3 of this section, the court, unless otherwise agreed by all the parties, shall instruct the jury to apportion fault among such persons and parties, or the court, if there is no jury, shall make findings, indicating the percentage of total fault of all the parties to each claim that is allocated to each party

and person who has been released from liability under subsection 3 of this section.

. . . .

3. Any release, covenant not to sue, or similar agreement entered into by a claimant and a person or entity against which a claim is asserted arising out of the alleged transaction which is the basis for plaintiff's cause of action, whether actually made a party to the action or not, discharges that person or entity from all liability for contribution or indemnity but it does not discharge other persons or entities liable upon such claim unless it so provides. However, the claim of the releasing person against other persons or entities is reduced by the amount of the released persons' or entities' equitable share of the total obligation imposed by the court pursuant to a full apportionment of fault under this section as though there had been no release.

Sections 538.205(2), 538.230.1 and 3 RSMo 1986 (effective Feb. 3, 1986). There can be no justification for treating lawyers and businessmen any differently than or less favorably than physicians and health care providers. All should be treated equally. We do not have a different statute of limitations for health care actions. *Strahler v. St. Luke's Hosp.,* 706 S.W.2d 7 (Mo. banc 1986). There is no reason to have a different rule regarding the handling and crediting of settlements.

I believe that the legislature's handling of tort reform, H.R. 700, §§ 36, 41, 84th Gen. Assembly, 1st Sess. (1987), signals their general approval of the comparative fault concept. In section 36 of H.B. 700, the legislature directed trial of product liability cases under comparative fault. House Bill 700 adopts almost verbatim section 2(d) of the U.C.F.A. approach as it relates to reallocation of uncollectible judgments:

2. In all tort actions for damages in which fault is assessed to plaintiff the defendants shall be jointly and severally liable for the amount of the judgment

rendered against such defendants except as follows:

(1) In all such actions in which the trier of fact assesses a percentage of fault to the plaintiff, any party, including the plaintiff, may within thirty days of the date the verdict is rendered move for reallocation of any uncollectible amounts;

(2) If such a motion is filed the court shall determine whether all or part of a party's equitable share of the obligation is uncollectible from that party, and shall reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault;

(3) The party whose uncollectible amount is reallocated is nonetheless subject to contribution and to any continuing liability to the claimant on the judgment;

1987 Mo.Legis.Serv. No. 1 (Vernon) (to be renumbered § 537.067, RSMo 1987).

The two described instances where the legislature adopted the U.C.F.A. approach together with the legislature directing trial of product liability cases under comparative fault suggests that we should fill the gap left open in § 537.060, where the legislature failed to state whether the settling parties should remain in the action for the purpose of determining their percentage of fault—their equitable share. All of the contradictions and confusion now existing by reason of the legislative changes can be removed by our simply stating and directing that from and after January 1, 1988, in all cases where one or more of the multiple defendants has settled with plaintiff either prior to or during trial, such settling defendant shall remain as or may be made a party to the action for the sole purpose of having the jury determine the party's percentage of fault. By so doing, all settlements thereafter would be handled and credited in accordance with section 6 of the U.C.F.A. We should state that in cases tried prior to January 1, 1988, the court may by agreement of the parties utilize this procedure. I recognize, of course, that the provisions of §§ 538.230 and 537.067 and the holding of this opinion should not apply to a cause of action resulting from negligent parking of a truck on February 24, 1980. In view of the fact that the procedure utilized by the principal opinion is a partial application of section 6, U.C. F.A. procedure, I would rule this and other cases tried before January 1, 1988 in accordance with the procedure outlined in the principal opinion.

By so doing, this Court would take a major step in the direction of total fairness in the tort system, the ultimate goal of all tort reform. The existing statutes and our case law would be totally harmonized.